ELIZABETH B. SMITH, *et al., vs.* JOHN H. DAY, Administrator c. t. a. of PRETTYMAN D. SMITH, Deceased.

*Will—Issue from Register of Wills—Juror—Challenge—Codicil— Republication of Will—Evidence—Conflict of Testimony.*

1. In empaneling the jury in a civil case a failure to challenge is a waiver of the right as to that one, but not as to the remainder. It is unlike a criminal case where the State has three challenges and the defendant six, for there the State has the right to wait until three jurors are challenged by the defendant, and reserve its three challenges to meet the remaining three of the defendant.

2. Testible capacity defined, and the authorities reviewed.

3. A codicil draws the will down to its own date, and makes the will speak as of the date of the codicil. It is now well settled that the execution of a codicil is a republication and confirmation of the will.

4. The rule stated governing testimony in will cases, and particularly medical testimony, and the testimony of subscribing witnesses.

5. The rule stated that should guide the jury when the testimony is conflicting.

(*October 11, 1899.*)

LORE, C. J., and PENNEWILL and BOYCE, J. J., sitting.

*John M. Richardson, A. L. Polk* and *Charles F. Richards* for the will.

*Robert C. White and Robert H. Richards* opposed.

Superior Court, Sussex County, October Term, 1899.

ISSUE FROM REGISTER under an order for review of will (No. 37, October Term, 1898).

While the jury was being empaneled, *Mr. White,* of counsel for the opposers of the will, announced that he wished to reserve his right to challenge, so far as the jury as then constituted was concerned, so that he might exercise his challenge in case a juror objectionable to him might be subsequently called; contending that such was the practice as laid down by the Court in *State vs. Brown, et. al., 2 Marvel, 381.*

LORE, C. J.:—If you reserve or pass it, you lose your challenge. The case to which you refer was a criminal case, where the State had three challenges and the defendants six; and if the State had not had the right to pass any challenges, there might have been three jurors drawn at the latter part of the proceeding of empaneling the jury that the State would have had no opportunity at all to pass upon. The State has the right to wait until three jurors are challenged by the defendant, and then to reserve its three challenges to meet the remaining three of the defendant, so that each may pass upon the whole jury.

But this is a civil case; if in a civil case you fail to challenge, you waive your right as to that one; not as to the remainder, it is only as to that one.

*Mr. White;*—If I waive this, I have another challenge?

LORE, C. J.:—Yes; if it does not exhaust your challenges.

The alleged will of the testator was dated January 21, 1898, and the codicil thereto was dated March 28, 1898. The opponents of the will contended and offered proof tending to show that by reason of an attack of apoplexy on the seventh day of January, 1898, the mind of the testator was so impaired at the time of the execution of both the will and the codicil, that he was incapable of making a will.

LORE, C. J., charging the jury:

Gentlemen of the jury:—The question for your determination is, whether the paper writing bearing date January twenty-first, 1898, with the codicil bearing date March 28, 1898, is or is not the last will and testimony of Prettyman D. Smith, deceased.

It is not denied in this case that the formal execution both of the will and the codicil were had according to law; but it is claimed by those opposing the will, that the testator at the time of the execution both of the will and the codicil was not of sound and disposing mind and memory. That at those respective dates, by reason of an attack of apoplexy on the seventeenth day of January, 1898, the mind of the testator was so impaired that he was incapable of making a will.

Under the laws of this State, any person of the age of twenty-one years or upward, of sound and disposing mind and memory has a right to make a will.

What constitutes a sound and disposing mind and memory has been defined with great clearness in the decisions of this State.

In *Chandler vs. Ferris, 1 Harr., 454,* Chief Justice Thomas Clayton used this language: "When the testator is capable of exercising thought and judgment and reflection, if he knew what he was about and had memory and judgment," he had testible capacity.

In *Duffield vs. Morris' Exr., 2 Harr., 375,* the Court says: "A sound mind is one wholly free from delusion. All the intellectual faculties existing in a certain degree of vigor and harmony; the

propensities, affections and passions being under subordination to the will and judgment, the latter being the controlling power, with a just perception of the natural connection or repugnancy of ideas. Weak minds again only differ from strong ones in the extent and power of their faculties; but unless they betray symptoms of a total loss of understanding or of idiocy or delusion, they cannot properly be considered unsound. A perfect capacity is usually tested by this: that the individual talks and discourses rationally and sensibly and is fully capable of any rational act requiring thought, judgment, and reflection. That is the standard of a perfect capacity; but the question is not how well a man can talk or reason, or with how much judgment he can act, or with how great propriety and sense he can act; it is only, has he mind and reason. Can he talk rationally and sensibly? Has he thought, judgment and reflection? Weakness of mind may exist in many different degrees without making a man intestible. Courts will not measure the extent of people's understanding or capacities if a man be legally *compos mentis*. Be he wise or otherwise, he is the disposer of his own property, and his will stands as the reason for his action."

In *Sutton vs. Suttan, 5 Harr., 459,* Chief Justice Harrington says: Testible capacity amounts " to nothing more than a knowledge of what he was about when he made the will, and how he was disposing of his property, and the purpose to do it."

In the *Lodge Will case, 2 Houst., 418,* the language of the Court is: " If the testator at the time of executing the will was capable of exercising thought, reflection and judgment, knew what he was doing, and how he was disposing of his property, and had sufficient memory and understanding to comprehend the nature and character of the transaction, he was capable of making a will. Mere weakness of mind or partial imbecility from disease of the body or from age will not render a person incapable of making a will."

In the *Jamison will case, 3 Houst., 108,* the language of the

Court is: "If he is able to understand that he is disposing of his estate by will, and to whom he is disposing of it, however weak his intellect may be, he is able and competent to make a will."

Such, gentlemen, is a sound and disposing mind as defined in our reports.

Every person is presumed in law to be of sound mind until the contrary is shown; the burden of showing an unsound mind in the testator rests on the parties contesting the validity of the will, and the testimony must relate to the time of its execution.—*Lodge will case, 2 Houst., 418.*

In ascertaining testible capacity, you should direct your minds to the precise time of the execution of the will. In cases like this, courts have been liberal in admitting testimony as to the physical and mental condition of the testator, both before and after the time of the execution of the will, but such testimony is admitted only to give you the environment of his life, and to enable you to concentrate your thoughts and judgment so as to say whether at the precise time of the making of the will he was of sound and disposing mind and memory; if he was, then it is a matter of indifference what may have been his condition at any other time. In this case there was a codicil. You are therefore to direct your attention both to the date of the will and to the date of the codicil.

A codicil draws the will down to its own date, and makes the will speak as of the date of the codicil.—*A. & E. Ency. of Law, Vol. 3, p. 510.*

It is now well settled that the execution of a codicil is a republication and confirmation of the will.

Judge Strong in *Neff's Appeal, 48 Pa. State, 501,* concisely states the law as follows: "That the effect of a codicil, duly executed, is to republish the will to which it refers, whether the codicil be annexed to the will or not, is the doctrine of all the authorities. The legal presumption of intended republication may indeed be rebutted by the language of the codicil, but in the absence of any express intent to the contrary, it always operates as a new adoption

of the will and a republication at the time when the codicil was made. Upon so plain a subject, it seems almost superfluous to refer to authorities."

This is the doctrine of our own courts in the case of *Smith vs. Dolby, 4 Harr., 350.*

If therefore on the twenty-first day of January, 1898, the date of the will, or on the twenty-eighth day of March, 1898, the date of the codicil to the will, at the precise time of the execution thereof, the testator understood how he was disposing of his property and the purpose so to do it, he would be of testible capacity; and in such case it would be immaterial what was his condition on any other day or even at any other time on those two days.

In your deliberations you are to be governed exclusively by the testimony in this case. Where the testimony is conflicting you are to reconcile it if you can; but if you cannot then you should be governed by the testimony of those witnesses, who under all the circumstances are most entitled to credit, considering their opportunities to know that of which they speak, their apparent fairness, intelligence and every other element that may fairly test their truthfulness and accuracy.

"Medical witnesses may testify as to the effect of disease on the mind, their opinions on questions of mental capacity may be given in evidence, and are in many instances intitled to consideration and respect. But the value and weight of such testimony, must necessarily depend upon the professional character and standing of the witness. If he be a person of more than ordinary intelligence and learning in his profession, of undoubted sobriety and correctness of judgment, and of great experience in regard to diseases affecting the mind, his opinions are justly entitled to the respectful consideration of the jury. But if the medical witness be a person of small learning and experience in regard to diseases affecting the mind, or is a man of crude and visionary notions or theories, his opinions are entitled to no weight whatever. In cases where the opinions expressed by medical witnesses conflict, as the

jury, with their limited and imperfect knowledge on the subject, cannot safely undertake to decide between them, or to reconcile the conflict, their opinions are entitled to but little if any weight." —*Jamison will case, 3 Houst., 122.*

The law makes a distinction between the subscribing witnesses to the will and other witnesses. The subscribing witnesses being placed by the law around the testator, at the time of the execution of his will, for the special purpose, among others, of ascertaining and judging his capacity, they are permitted to testify as to the opinion they formed at the time of the condition of his mind, whether it was sound or unsound. And if they are persons of intelligence and veracity their opinions are always entitled to great weight with the jury."—*Jamison will case, 3 Houst., 121.* They speak of the testator's condition at the exact time of the execution of the will, which is the time which tests his mental capacity.

The law gives a person the right to dispose of his property as he sees fit, and he alone is the judge of how he will dispose of it. You are not to consider whether it is such a will as you would have made, or such a will as you think he ought to have made. For if he was possessed of a sound and disposing mind and memory, it was his right to dispose of his property by will as he pleased, and with that disposition you have nothing whatever to do.

If therefore from the evidence, you believe that on the twenty-first day of January, 1898, the date of the will, or on the twenty-eighth day of March, 1898, the date of the codicil, that is to say, on either date, that the testator was of sound and disposing mind and memory, that is to say, that he was possessed of intelligence enough to know how he was disposing of his property and that he purposed so to do, then your verdict should be that that paper writing is his last will and testament. If, on the contrary, you believe from the testimony that he was not then of such sound and disposing mind and memory, then your verdict should be that such paper writing is not his last will and testament.

The jury found that the paper writing was not the last will of Prettyman D. Smith.