[No. 6922.]

WEAVER v. THE PEOPLE.

1. **Bill of Exceptions — Where Necessary** — A criminal conviction will not be reviewed for errors alleged in the charge of the court, or in denying a motion for a new trial, unless presented by a bill of exceptions.—(618)

2. **Criminal Practice — Jury — Challenging Alternately** — In the trial of an indictment for criminal information, the peremptory challenges should be exercised by the people and the accused, alternately. Nicholson's case, 31 Colo. 53, followed.—(619)

3. **Evidence — Dying Declarations** — The dying declarations of a person whose murder is charged are admissible only when it appears that they were made at a time when the party was in extremis, and was speaking under the sense of impending dis-

solution. This may be shown by the circumstances: the party's declaration, his condition, and the nature and extent of his wounds. The question of the admissibility of the declaration is exclusively for the court.—(620)

The deceased had received a mortal wound. A physician was called immediately. Soon after his arrival the wounded man declared to him that he "was done for." He repeated similar expressions afterwards, to others, and at no time expressed any hope of recovery. His declaration, made while in this condition, that the prisoner had shot him without provocation was held properly received.—(621-623)

*Error to Conejos District Court*—Hon. CHARLES C. HOLBROOK, Judge.

Mr. IRA J. BLOOMFIELD, and Mr. B. F. HARWITZ, for plaintiff in error.

Hon. JOHN T. BARNETT, attorney general, and Mr. GEORGE H. THORNE, deputy attorney general, for the people.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The defendant Weaver was tried and convicted of murder in the first degree and sentenced to imprisonment in the penitentiary for life. The assignments relied upon by him for a reversal of the judgment are: Errors of the court in impaneling a jury; in admitting alleged dying declarations of Mr. Brown, the man who was killed; in the instructions; in improperly overruling defendant's motion for a new trial.

Neither the motion for a new trial nor the instructions, nor the rulings thereon, nor the objections and exceptions of defendant thereto, if any, have been brought to this court by a bill of exceptions. Our established practice in criminal cases requires that they be incorporated in a bill, and thus made a part of the record, to entitle the complaining party to a review of the trial court's rulings thereon.—

*Edwards v. People,* 26 Colo. 539; *Packer v. People,* 26 Colo. 306; *Bergdahl v. People,* 27 Colo. 302; *Keady v. People,* 32 Colo. 57. The only questions, therefore, upon which defendant may be heard on this review are the manner of impaneling the jury and the admission of dying statements.

In the district court of Conejos county, where trial was had, the former practice in impaneling a jury was for the people first to exercise all its peremptory challenges before a defendant was called upon to exercise any. The practice prevailing at the time of this trial was for the people and the defendant to make their peremptory challenges alternately, the people making the first one. Defendant complains that this method of alternating challenges is wrong and was prejudicial to him. His counsel recognize that the decision of this court in *Nicholson v. People,* 31 Colo. 53, is against their position. In that case this court, speaking by Steele, Justice, held that "In the absence of a statute regulating the impaneling of juries and the exercise of the privilege of peremptory challenges in the trial of criminal cases, the mode of challenging is left to the sound discretion of the court and unless there has been a manifest abuse of that discretion the action of the trial court will not be disturbed by the appellate court." Notwithstanding vigorous argument of counsel, that the earlier method is the better and that it prevails in other jurisdictions, we are satisfied with the decision in the *Nicholson case* and again approve its doctrine. We think the better rule is as there stated: "Challenges should be exercised alternately, one by one; and after each challenge the panel refilled. This gives the parties an opportunity to challenge in proper order, and would seem to be the most orderly way of selecting a jury." Such practice, under the direction of the trial court, was observed by the par-

ties in exercising their peremptory challenges at this trial and no harm was thereby done defendant.

In 1 Greenleaf on Evidence (15th ed.), at sec. 158, the learned author in speaking of the admission of dying declarations says: "It is essential to the admission of these declarations, and is a preliminary fact, to be proved by the party offering them in evidence, that they were made under a sense of impending death; but it is not necessary that they should be stated, at the time, to be so made. It is enough, if it satisfactorily appears, in any mode, that they were made under that sanction; whether it be directly proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants, stated to him, or from his conduct, or other circumstances of the case, all of which are resorted to, in order to ascertain the state of the declarant's mind." In *Graves v. People*, 18 Colo. 170, this court after stating the reasons for admitting such declarations said: "They are only admitted when it is shown that the party making them was *in extremis* at the time, and when all hope of this world had passed." In *Brennan v. People*, 37 Colo. 256, substantially the same language was employed, and the court said on the question of declarant's belief: "This may be shown not only by what the injured person said, but by his condition and the nature and extent of his wounds. Whether, from all the circumstances under which the statement was made, it satisfactorily appears that it was made under a sense of impending death, is a question exclusively for the court."—*Zipperian v. People*, 33 Colo. 134, is a case quite in point in favor of the rulings below.

The foregoing statements of the rule governing the admission of dying declarations are, generally speaking, sanctioned by the courts of this country.

The difficulty is not so much in the statement of the rule as in its application to the facts of the various cases as they arise. The declarations of Brown— who was shot by defendant Weaver, and who died on the next day after the infliction of the mortal wounds —that defendant shot him down without provocation, as charged in the information, were admitted in evidence over defendant's objections. These objections, so far as necessary to consider here, are that it was not made to appear to the trial judge that the declarant at the time the statements were made believed that he was about to die and that he had abandoned all hope of recovery. The record shows that soon after Brown was shot in a saloon in Alamosa, he was taken to a hotel in that town and a doctor at once summoned. Brown was shot twice, one shot taking effect in his left thigh, the other passing through his abdomen. The latter wound was mortal and the victim's condition was serious from the beginning. In a conversation with his physician soon after the latter reached his bedside, Brown said, "He thought he was going to die," and the doctor said his condition was such as to warrant that impression. Brown did not say how soon he expected to die, but he used this language, as testified to by the physician: "He said he was done for." The doctor did not advise him as to his condition, but the expression used by Brown was his own conclusion about his condition. This, or a similar, expression was repeatedly used by him in the presence of the doctor and other persons who have so testified, and there is not any evidence to the contrary. Brown was shot about one o'clock in the afternoon, and about an hour thereafter his friends secured a special train to take him from Alamosa to a hospital at Salida. He was put aboard the train, which reached Salida about six o'clock of the same day, and he was operated on between seven

and eight o'clock that night, with a view to see if an operation would be helpful. He died some time the next day. While on the train he repeatedly said to those about him, "I am done for"; and when the doctor and others present tried to cheer him up, Brown would not believe their statements and said "No, I am done for. He (referring to the doctor) can't do anything." To a witness who told him that his friends had planned to take him to a hospital to try to save his life, Brown replied: "I am all in; I am done for. It is no use. I am going to die. I would like to see my wife before I die. Try to get her to me before I die." He further said "he was all in and could not live." These, in substance, are the statements made at various times by Brown of his own volition and in reply to various questions asked him. The wounds, as we have said, were mortal, and it is entirely clear that Brown fully recognized that they were. Never at any time after receiving the wounds did he express any belief or conviction as to his condition other than, or different from, the foregoing quoted expressions. Unquestionably, therefore, under the rule of law applicable to dying declarations, Brown made these statements under a sense and belief of impending death and had no hope of recovery. From his statements, thus made, a writing was prepared by one of the persons present when they were made, which was read over to Brown after the train started from Alamosa, and he was asked if he understood it and was willing to affix his signature to it, and his answer was "Yes." A pen was given to him with which to write his name and he was supported by an attendant while trying to do so; but was too weak to sign his name, but made his mark instead. The writing, though not reproducing the exact language which Brown used in expressing his belief as to his condition, was in effect

the same, and it contained the statement that he was "mortally wounded and about to die," to which he expressly assented, and impliedly approved by knowingly affixing his mark. His every word about his condition indicated that he knew he was very near to death and, being fully conscious thereof, he made the statements. Perhaps the strongest case cited by defendant in support of his contention is *State v. Gianfala,* 113 La. Rep. 463. In that case it appeared that the wounded man repeatedly said that he thought he was going to die; yet it was apparent from his conduct and his actions that he had not given up all hope. For, when a physician came to him, he asked the latter's opinion, and, on his advice, started on a journey to a distant city to have himself operated upon as being his one chance of recovery. The court held that, although the declarant had stated that he thought he was going to die, nevertheless, since he asked the opinion of his physician and took his advice to go to a distant city to obtain relief, this indicated that he still had some hope, particularly as the physician told him that there would be a chance for him if he went to New Orleans and had himself operated on. That, however, is not this case. Instead of asking to be sent to Salida, or giving his consent thereto when one of his friends stated that the journey was to be made, Brown, in effect, protested against it and said that it would be useless, for he knew he was going to die, and asked to have his wife brought to him before he passed away.

Considering all of the facts and circumstances, we think these oral declarations and the confirmatory writing were properly admitted in evidence.

No prejudicial error having been shown, the judgment is affirmed.                    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MUSSER concur.