COMMONWEALTH *vs.* WILLIAM P. WHITE & others.

Essex.    January 20, 1911. — March 2, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Conspiracy,* To bribe.    *Evidence,* Against different defendants indicted jointly, Admissions and confessions.    *Jury.    Practice, Criminal,* Challenge of jurors.

At the trial of an indictment against a mayor of a city and five other defendants for a conspiracy to bribe three members of the board of aldermen of the city to vote to approve the removal by the mayor of a certain person from the office of chief engineer of the fire department, although the statements of the different defendants, considered as admissions, are competent evidence only against the persons who made them, yet, if a material transaction, like the acceptance of a bribe or an attempt to influence one of the aldermen by the gift of a bribe, was accomplished wholly or in part by words, proof of the transaction by stating the words is competent against any of the defendants in whose trial the transaction is a circumstance proper to be proved.

At the trial of an indictment against a mayor of a city and five other defendants for a conspiracy to bribe three members of the board of aldermen of the city to vote to approve the removal by the mayor of a certain person from the office of

chief engineer of the fire department, there was evidence of conversations and acts of the mayor which tended to show that he took part in such a conspiracy and of many circumstances tending to show that the mayor had knowledge that attempts at bribery were going on and participated in them. Upon exceptions alleged by the defendant mayor alone, it was *held,* that there was evidence warranting a finding that that defendant conspired with the persons who were engaged in the bribery to accomplish, if possible, the removal of the chief engineer of the fire department by that means, which was sufficient to sustain a conviction under the indictment.

At the trial of an indictment against a mayor of a city and five other defendants for a conspiracy to bribe three members of the board of aldermen of the city to vote to approve the removal by the mayor of a certain person from the office of chief engineer of the fire department, a witness, called by the Commonwealth, testified that, at the time that this removal was being most actively agitated, the mayor and two of the persons who were shown to have been active in attempting bribery were in the mayor's office together, and that the mayor's private secretary asked the witness to retire, saying that "they wanted to have a private conversation." The presiding judge allowed the jury to consider this evidence against the defendant mayor if they found that the remark was made with the knowledge and consent of that defendant. Upon exceptions alleged by the defendant mayor alone, it was *held,* that there was no error ; that something reasonably might be inferred as to authority to make the remark from the fact that the private secretary of the mayor assumed to give a direction to a visitor in the mayor's presence, and that on the evidence the jury might have found that the defendant mayor heard the remark and from his silence might infer his assent to it.

Under R. L. c. 176, § 29, which is the only statute on the subject, there is nothing requiring the Commonwealth in a criminal case to exercise its right of challenging jurors before the defendant or to prevent the Commonwealth from challenging jurors peremptorily after the defendant has exhausted all his challenges. In the absence of a direction by the court defining the order and manner of making the challenges, the right to challenge continues on both sides until the jurors are sworn.

KNOWLTON, C. J.　This is an indictment against the defendant White, who was the mayor of the city of Lawrence, and five other persons, charging them with having conspired together, and with other persons whose names are to the jurors unknown, to bribe three members of the board of aldermen of that city to vote in favor of the removal of one Hamilton from the office of chief engineer of the fire department, which office he held by the appointment of this defendant as mayor. The exceptions were taken by White alone,* and he is the only defendant before us. The indictment is in two counts, charging the substantive offense in different forms, which it is not impor-

---

* The six defendants were tried before *Schofield,* J. One was acquitted, and the others, including the defendant White, were convicted.

tant to consider. The defendant desired to remove Hamilton from the office, and wished to have a majority of the board of aldermen, which consisted of six members, vote to approve the removal of him.

The exceptions argued by the defendant relate to three subjects: First, the refusal to rule that there was no evidence to warrant a verdict of guilty; second, the alleged errors in ruling upon the admission of evidence; third, the impanelling of the jury, and the alleged error in allowing certain peremptory challenges by the Commonwealth.

There was much evidence tending to show attempts to bribe aldermen by some of the defendants. This came through the testimony of numerous witnesses as to what was said and done, constituting such attempts. The defendant's counsel has argued the case as if none of this testimony was to be considered by the jury, as against the defendant, for any purpose. When the district attorney offered different conversations between different defendants and individual members of the board of aldermen, the judge, after objection by the defendant White, admitted the conversations and statements only as against the particular defendant who was the party to them, telling the jury that he would instruct them later as to how far and for what purposes the statements could be considered. Plainly the conversations and statements, considered as in the nature of admissions, were competent only as against the persons who made the statements or took part in the conversations. This was the substance and effect of the ruling.

But if a material transaction, like the acceptance of a bribe, or an attempt to influence one by the gift of a bribe, was accomplished wholly or in part by words, proof of the transaction by stating the words would be competent against any person in whose trial the transaction might be important as a circumstance proper to be proved. The substance of the offense charged against the defendant can be proved only as such offenses are commonly proved, by circumstantial evidence.

There was testimony of a statement by the defendant in December, 1909, that, if he was re-elected and could get four aldermen to stay, he would remove Hamilton as chief of the fire department, that he was an ingrate; that he repeated this state-

ment several times; that he asked the different aldermen how they stood in regard to the removal of Hamilton. It was well established that the purpose and desire of the defendant in reference to the removal of Hamilton were like those of the persons who were shown to have offered bribes. When the mayor asked the members of the board of aldermen how they stood on Hamilton's removal, "he started walking away and said, 'There will be no police appointments.'" Afterwards, when the grand jury were investigating the matter, he sent for a witness and asked him to state to the grand jury "that it was the wish of the marshal that these police officers be appointed; that he wanted the answers to correspond." There was evidence that about the time when these attempts at bribery were going on, the mayor had private interviews with some of the persons who were engaged in the attempts. It appeared that when money had been paid to one of the aldermen as a bribe and the removal of Hamilton had not been accomplished, the mayor took active measures, with the aid of the city marshal and other officers, to obtain the return of it, that he told the reporters "that a friend of his had given $1,000 to a member of the city council for a certain matter, and that the friend came to him and told him about it"; that he took down a law book and read in regard to the punishment of the offense of taking money as a bribe to one from whom he was trying to get help in getting back the money, and who had taken a part in the bribery. The evidence also tended to show that he pretended to read from the book that which was not in it.

There was evidence that, afterwards, an order was passed by the city council, requesting the mayor to call the attention of the district attorney to the one-thousand-dollar transaction. There was testimony that several days afterwards, at a meeting of the city council, he was asked if he had done anything about it, and he answered jokingly, in a way to indicate that he did not intend to do anything. There was evidence that he took no measures to commence the prosecution of any person. There were many other circumstances properly to be considered on the question whether the mayor had knowledge that attempts at bribery were going on, and participated in them.

We are of opinion that there was evidence to warrant a find-

ing that the defendant conspired with the persons who were engaged in the bribery, to accomplish, if possible, the removal of Hamilton by that means.

A witness was permitted to testify, against the defendant's objection, that about the time of the appointment of Hamilton the defendant had a talk with the witness about the appointment, and said, "Well, Jim, I have kept my word. I said I would appoint him and I did appoint him, though I was offered $2,500 not to appoint him." This tended to show that, at the time of the appointment, he knew that a large sum of money was ready to be paid to prevent the appointment, and to put the office in the control of another. This was not very long before his effort to remove him. The evidence showed that he knew who was ready to pay the money, and that he was in such relations with the person or persons who wanted to pay it that they made him a direct offer of $2,500 to control the appointment. These are facts of no consequence, except as they indicated conditions and his knowledge of conditions presumably existing at the time of the attempt at removal. In connection with other circumstances, we are of opinion that these matters might be considered by the jury in determining his attitude and conduct when attempts to obtain the removal by bribery were going on.

Another witness, called by the Commonwealth, testified that, just at the the time when this removal was being most actively agitated, the defendant and two of the persons who were shown to be active in attempting bribery were in the mayor's office together, and that the mayor's private secretary asked the witness to retire. "He said they wanted to have a private conversation." This testimony was excepted to. The jury were allowed to consider it, only if they found that this remark was made with the knowledge and consent of the defendant White. Something reasonably might be inferred as to authority, from the fact that the private secretary of a mayor assumed to give a direction to a visitor in the mayor's presence. As we understand the testimony, the jury well might find that the defendant heard the remark, and from his silence they might infer his assent to it. We are of opinion that the evidence was competent.

It is argued with great earnestness that there was error in permitting the Commonwealth to challenge two of the jurors

peremptorily, after the defendants had exhausted all their challenges. The statute touching this subject is found in the R. L. c. 176, § 29, and is as follows : " Peremptory challenges shall be made before the commencement of the trial and may be made after the determination that a person called to serve as a juror stands indifferent in the case."

In this case seven jurors were called by the clerk, of whom two were challenged by the Commonwealth, leaving five in the jury box. The defendant's counsel then asked leave to interrogate the jurors called for the trial. The judge ruled that only the statutory questions should be put, and they were put by the judge to these five jurors, and to others as they were called. Some were excused by the judge as not appearing to stand indifferent. Others were found to be indifferent. When twelve men, so found indifferent by the court, were sitting in the jury box, the defendants respectively exercised their rights of challenge. New jurors were called to take the place of those challenged, and each new juror was interrogated by the judge. Some were found to stand indifferent and others were excused. The defendants continued exercising their rights of challenge until all of them were exhausted. Then, when twelve men were sitting in the jury box and before they were sworn, the district attorney challenged two of the jurors peremptorily. The defendant objected, contending that the district attorney must exercise his right of challenge before the defendants, and that, by his failure to do so, he had lost it. The judge found as a fact that the district attorney did not intend to waive his right, and allowed his challenges to stand. The defendant excepted.

The only statute on the subject is that quoted above. There is no rule of court prescribing the manner in which these rights shall be exercised. Usually in civil cases, and often in criminal cases, it is exercised by the parties without any order of the court, and without an attempt to have their rights defined as to the order or method of making the challenges. In cases where the parties think the right very important, and usually in trials for murder, a direction is given by the court, defining the order and manner of making the challenges. In the absence of such a direction, or of conduct plainly indicating a waiver, the right

of both parties continues until the jurors are sworn. If in any case there is danger of a misunderstanding about it, it is well that the court should give such directions as will fairly secure the rights of both parties.

It seems that there was a misunderstanding on the part of counsel for the defendants in this case, as they thought there was a rule requiring the Commonwealth to exercise its right first, if it wished to exercise it at all. There was no error of law in the impanelling of the jury.

*Exceptions overruled.*

*H. Parker,* (*H. H. Fuller* with him,) for the defendant White.
*W. S. Peters,* District Attorney, for the Commonwealth.