THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY LEMBKE, Plaintiff in Error.

*Opinion filed April 23, 1926.*

1. CRIMINAL LAW—*when judgment must be reversed for error in selection of regular panel of jurors.* As a general rule, mere irregularities in the selection of the regular panel or in the empaneling of a jury will not require reversal of a judgment of conviction unless it is shown that the defendant is prejudiced thereby, but where the jury list is not originally made up in accordance with the provisions of section 1 of the Jurors act, and no second list is prepared from which to draw competent jurors for the regular panel, as required in section 2, the substantial provisions of the statute are violated and the judgment must be reversed.

2. SAME—*talesmen cannot be summoned until regular panel is exhausted.* Talesmen cannot be legally summoned and tendered as jurors until a regular panel of legally selected jurors has been exhausted, and where such is not the case it is error to overrule challenges as to the talesmen.

WRIT OF ERROR to the Circuit Court of Winnebago county; the Hon. EARL D. REYNOLDS, Judge, presiding.

DAVID D. MADDEN, and HALL & DUSHER, (ROY F. HALL, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, WILLIAM D. KNIGHT, State's Attorney, VIRGIL L. BLANDING, and ALFRED B. LOUISON, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Harry Lembke, was indicted in the circuit court of Winnebago county for the crime of receiving stolen property July 25, 1924, knowing the same to have been stolen. His trial resulted in a verdict of guilty as charged in the indictment and he was sentenced to the penitentiary for an indeterminate term. He has sued out this writ of error to review the judgment, assigning as er-

·ror the refusal of the court to sustain his challenge to the .
array and quash the venire of jurors who tried the cause,
refusal of the court to sustain objections to leading ques-
tions, admission of incompetent testimony, the giving and
refusing of instructions, and that the verdict is contrary to
the evidence.

The following sections of chapter 78 of Hurd's Statutes
of 1921, entitled "Jurors," provide as follows:

"Sec. I. That the county board of each county shall, at
or before the time of its meeting, in September,. in each
year, or at any time thereafter, when necessary for the pur-
pose of this act, make a list of a sufficient number, not less
than one-tenth of the legal voters of each town or precinct
in the county, giving the place of residence of each name
on the list, to be known as a jury list.

"Sec. 2. At the meeting of the county board, in the re-
spective counties in this State, containing a population of
not more than 250,000, in September, in the year of 1874,
and in each year thereafter, such board shall select from
such list a number of persons equal to one hundred (100)
for each trial term of the circuit and other courts of rec-
ord, except county courts, which may be provided by law,
to be held during the succeeding year, to serve as petit
jurors.   *   *   *   Jurors in all counties in Illinois must
have the legal qualifications herein prescribed, and such per-
sons only as are:   Inhabitants of the county, or precinct,
not exempt from serving on juries:   of the age of twenty-
one years, or upwards, and under sixty-five;   in the posses-
sion of their natural faculties, and not infirm or decrepit;
and free from all legal exceptions, of fair character, of ap-
proved integrity, of sound judgment, well informed, and
who understand the English language.

"Sec. 7. A list of jurors so selected shall be kept in the
office of the county clerk, who shall write the name and
residence of each person selected upon a separate ticket and
put the whole into a box to be kept for that purpose.

"Sec. 8. At least twenty days before the first day of any trial term of any of said courts, the clerk of said court shall repair to the office of the county clerk, and in the presence of the county judge and of such county clerk, after the box containing said names has been well shaken by the county clerk and being blind-folded shall without partiality, draw from said box the names of a sufficient number of said persons then residents of said county, not less than thirty for each two weeks that said court will probably be in session for the trial of common law cases, to constitute the petit jurors for that term.

"Sec. 12. The judge shall examine the jurors who appear, and if more than twenty-four petit jurors who are qualified and not subject to any exemption, or any of the disqualifications provided in this act, shall appear and remain after all excuses are allowed, the court shall discharge by lot the number in excess of twenty-four. If for any reason the panel of petit jurors shall not be full at the opening of such court, or at any time during the term, the clerk of such court may again repair to the office of the county clerk and draw in the same manner as at the first drawing such number of jurors as the court shall direct, to fill such panel, who shall be summoned in the same manner as the others, and, if necessary, jurors may continue to be so drawn and summoned from time to time until the panel shall be filled."

It appears that when a jury was called to try the cause, and before the jurors were sworn to answer questions and while they were in the jury box, the plaintiff in error by his counsel entered a challenge to the array. In September, 1923, the board of supervisors of Winnebago county had selected six per cent of the registered voters of each township and precinct and adopted that list as the jury list. The county clerk copied these names on cards and put them into the jury box kept in his office for that purpose. There were other names in the box that had been in there since 1922 and had been put in there in the same manner as the

names were put in in 1923. The 1924 list had not been made at that time. After the board of supervisors had adopted the jury list as above they did not select any number as eligible for jury service for each or any of the terms of the court for the ensuing year. When the original panel had been exhausted talesmen were called into the jury box to complete the panel. Before these talesmen were sworn to answer questions plaintiff in error challenged them on the ground that talesmen could not be called to fill a panel illegally formed. The court overruled the challenge to the array and all challenges to the talesmen summoned and sworn.

The clear provisions of our law with reference to jurors, as shown by the above sections, are, that when jury cases are being tried in any of the circuit courts the court must at all times have a regular panel of twenty-four jurors selected in the manner required by the foregoing sections of the statute, and that no talesmen can be summoned until the regular panel is filled and exhausted except as provided in said section 12; that in case a jury shall be required in such court for trial of any cause, before the panel shall be filled in the manner in that section provided, the court shall direct the sheriff to summon from the bystanders, or from the body of the county, a sufficient number to fill the panel, in order that a jury to try such cause may be drawn therefrom, and the statute then provides for the immediate discharge of such talesmen from the panel when such case is concluded. The regular panel, nevertheless, should be filled by drawing jurors and having them summoned as provided in the first part of section 12, in case the court finds an incomplete panel is left after he has examined and retained the competent jurors out of the thirty jurors summoned as provided in said section.

The showing in this record is that the county board absolutely disregarded the provisions of said sections 1 and 2 aforesaid. In the first place, they failed to get a full ten

per cent list as provided in section 1. In the second place, they made absolutely no attempt whatever to comply with section 2 as to making a selected list of one hundred persons for each trial term of the circuit court and other courts of record of the qualifications mentioned in that section. The jury box was simply filled by putting all the original names on the list made under said section 1, and the original panel in this case was drawn from such list and summoned and tendered by the court to the People and the defendant as alleged competent jurors to serve on the regular panel. Such regular panel was illegal and the challenge to the array should have been sustained. It was illegal because there was no pretense by the county board, or even an attempt, to comply with the positive requirements of said section 2. Every defendant in a criminal case, as well as a litigant in other cases, is entitled to a jury trial according to the law of the land. It is just as important and just as significant to such defendant that he be tried by a jury duly qualified and legally selected as it is that he be tried before a judge legally selected and duly qualified under the law, and even more so. We have repeatedly held that when the substantial provisions of these statutes, and particularly of sections 1 and 2, are not substantially complied with in the selection and qualification of the regular panel, and the challenge to the array by the defendant is overruled, that such action of the court is reversible error. It was reversible error in this case.

It was also error for the court to overrule the challenges as to the talesmen, and for the reasons assigned by plaintiff in error that talesmen cannot be legally summoned and tendered as jurors until a regular panel of legally selected jurors has been exhausted.

The foregoing absolute denial of a jury trial according to the law of the land is attempted to be answered by the argument that the plaintiff in error has not shown that the jurors selected and sworn in this case did not possess the

qualifications of lawful jurors and that he was prejudiced by the action of the court in denying him such right of a trial by a legal jury. To sustain such a contention is to absolutely disregard the mandates of the statute as to the selection and qualification of jurors, and there could be no case in which a defendant could protect himself against such wholesale disregard of law unless he could positively show that he was prejudiced by such a ruling. The intention of the statute, as shown in the foregoing sections, is to have a jury selected in such a manner that all litigants may receive the same fair consideration in trials by a jury selected in a manner to prevent special visitations of unfairness or malice to certain litigants and certain defendants when tried in court. The constitutional and legal rights of citizens cannot be thus jeopardized. Those who have had experiences of long years in our circuit courts know that it is not possible for a litigant or for a defendant in a criminal case to show such prejudice in every instance in which it may have occurred, and for the reason that where parties and jurors undertake through the jury to corruptly favor or to maliciously injure a party litigant or a defendant it is not boldly and publicly done, but usually secretly and with intent to cover up and to conceal such unlawful, fraudulent or malicious conduct. What does it matter in this case that the defendant did not exhaust all his challenges on the regular panel? What does it matter that he may not have exercised a single challenge to any juror or alleged juror, whether on the regular panel or summoned as a talesman? No one of them, juror or talesman, was legally selected or summoned according to law to act as such juror, and if he had exhausted all of his challenges and had caused one hundred more jurors to be examined he could not in any way have changed or bettered his condition, as any jury that he might finally select or be tried by in this case would have been an unlawful and incompetent jury because not first qualified and legally

selected and put into the jury box under the substantial provisions of our statute. It is true that we have frequently ruled that mere irregularities in the selection of the regular panel or in the empaneling of a jury is not reversible error where it is not shown that the defendant is prejudiced; (*Siebert* v. *People,* 143 Ill. 571; *Henry* v. *People,* 198 id. 162; *People* v. *Corder,* 306 id. 264;) but when all the substantial provisions of sections 1 and 2 of the statute on jurors are violated, and it is clearly shown that such violations are substantial and amount to a denial of a trial by a jury according to the law of the land, such denial to a defendant is reversible error. *Borrelli* v. *People,* 164 Ill. 549; *Healy* v. *People,* 177 id. 306; *People* v. *Mankus,* 292 id. 435; *People* v. *Boston,* 309 id. 77; *People* v. *Cochran,* 313 id. 508.

The court in this case committed reversible error in refusing to sustain a challenge to the array as to the regular panel of jurors and in overruling the challenges of the defendant to the talesmen who were illegally tendered to the defendant to fill panels of the jury that were also illegally tendered as competent jurors duly selected. There was no reversible error in any other particular committed in the trial of this case, and for the sole reason aforesaid the judgment of the court must be reversed and the cause remanded.

Instruction No. 7 complained of by plaintiff in error was a correct statement of the law and it was applicable to this case, and the court did not err in giving it to the jury. Instruction No. 2 for the State was a mere abstract proposition of law, and for that reason, only, it was error to give it. It was a correct proposition of law, and so far as we are able to see the defendant was not prejudiced thereby. These two errors may be avoided on another trial.

The judgment of the court is reversed and the cause is remanded for a new trial, and for the sole reason that the defendant in this case has been denied a trial by a legal jury as guaranteed to him by the law of this State.

*Reversed and remanded.*