ASA L. LE GRO, Plaintiff, Appellant, v. WILCY I. MOORE, Defendant, Appellee.

*(January* 15, 1958.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Clement C. Wood* for appellant.

*Raymond L. Becker* for appellee.

Supreme Court of the State of Delaware, No. 39, 1957.

WOLCOTT, J.:

One question is presented by this appeal—the proper construction of 10 *Del. C.* § 4520—which provides in part as follows:

"In all civil actions, each party may * * * challenge, without cause, any juror or jurors drawn * * * not exceeding six in number, * * *."

The action is one for personal injuries and was tried in the Superior Court of New Castle County before a jury. A verdict of $1,500 was returned for the plaintiff on which judgment was entered.

Thereafter, asserting numerous reasons, plaintiff moved below for a new trial, which was denied. Plaintiff now appeals, urging as the sole reason for reversal of the judgment below the refusal of the trial court to permit the peremptory challenge by the plaintiff of Juror No. 6.

The facts upon which the appeal is based are stated. At the outset of the trial twelve jurors were drawn and seated in the jury box. Thereafter, commencing with the plaintiff, the list of jurors drawn was handed alternatively to the parties for the purpose of challenge. Each side in turn exercised a total of four peremptory challenges. After each such challenge, the name of a new juror was drawn and that person was seated in the jury box and the new list submitted for challenge. After having exercised four challenges, the plaintiff, when again the list was submitted, announced, "Content". The list was then handed to the defendant who exercised a fifth peremptory challenge. The juror thus challenged was excused and a substitute drawn. The list was then handed again to the plaintiff who attempted to challenge Juror No. 6 who had been drawn and seated in the jury box prior to the time plaintiff announced, "Content".

The trial judge refused to allow the plaintiff to challenge Juror No. 6, holding the failure to exercise the plaintiff's fifth challenge amounted to a waiver of that particular challenge and of the right to challenge thereafter any juror then seated in the jury box. The plaintiff was thereby limited in the exercise of her sixth and remaining challenge to the substitute drawn for the juror challenged by the defendant as his fifth peremptory challenge.

Plaintiff argues that the failure to exercise a challenge when the list of jurors is submitted for challenge amounts in law merely to a waiver of that particular challenge, and that the re-

maining challenges may be exercised upon any juror seated in the box, irrespective of whether or not such juror was seated at the time the right to a specific challenge is waived. Plaintiff cites as authority *How v. Chesapeake & Delaware Canal Co.*, 5 *Harr.* 245, and *Woolley on Delaware Practice*, Vol. 1, § 654.

The *How* case, decided in 1849, as reported is authority for the plaintiff's position. The circumstances of that case are almost in exact parallel with those of the case before us. It was there held that the neglect of either party to exercise a challenge at the proper time amounts to a waiver of the right for that particular challenge, and that the remaining challenges could be exercised against the whole panel, including the jurors originally drawn and substitutes drawn in place of those challenged by either party. Judge Woolley, in his work on Delaware Practice, citing the *How* case, states this to be the practice of the Superior Court.

Both sides in the argument before us referred to authorities in other jurisdictions upon the point. It appears that there is a divergence of view among our sister states as to the proper construction of similar statutes granting the right to litigants in a civil cause of peremptory challenges to jurors drawn for the trial of a case. See Annotation, 3 *A. L. R.* 2d 499. We think, however, that in the determination of the precise question of Delaware practice before us, authorities from other jurisdictions are of little assistance since the reported decisions show an almost equal division of view upon the question of the effect of a waiver of the right to challenge at the appropriate time.

We take judicial notice of the fact that, despite the ruling in *How v. Chesapeake & Delaware Canal Co., supra,* the practice consistently followed in the Superior Court for at least the last fifty years with regard to the exercise of peremptory challenges of jurors in civil causes has been that followed in the trial of this cause, and not that announced in the *How* case. The consistent practice for at least that long has been to regard the failure to exercise a peremptory challenge at the proper time as

a waiver of that particular challenge, and also as a waiver of a right to exercise any remaining challenges against the jurors drawn and seated in the jury box at the time.

There is no indication in our reports of a practice consistent with the rule in the *How* case since its decision. Such reported decisions as there are are to the contrary. For example, the rule followed in drawing juries for criminal cases is settled decisional law consistent with the practice followed in this particular civil cause. Thus, in *State v. Brown*, 2 *Marv.* 380, 36 *A.* 458, the court, upon a motion that the State not be permitted to reserve its peremptory challenges (the State at that time being granted three to the defendant's six), ruled that because of the different number of challenges granted each side the State would be permitted to reserve its three challenges until the defendant had exercised three of his. The court stated that a criminal case differed from a civil case in which the waiver of a right to challenge at the proper time amounted to a forfeit of that particular challenge. In *State v. Lynn*, 3 *Penn.* 316, 51 *A.* 878, the Attorney General, after the jury was drawn and seated, stated that he was satisfied but sought to reserve his right to pass upon any juror then in the box. On the authority of *State v. Brown, supra*, the court ruled that if the State waives its right to challenge, it may thereafter exercise its remaining challenges only as to jurors called after the waiver of its right to exercise a challenge.

We can see no distinction in principle between the exercise of peremptory challenges in the drawing of criminal and civil juries. The grant by the State of the right to challenge without cause is made for the same purpose in both instances. There is no valid reason which occurs to us why the waiver of the right to challenge at a particular time should be attended with differing consequences depending on whether the cause is criminal or civil in nature. Nor, indeed, was there any difference in the practice in 1901, the date of the *Brown* decision.

While the practice as now followed was expressly approved in *State v. Brown* with respect to criminal cases, the unfortunate fact is that there has been no express decision on the point in

civil causes since the *How* case decided in 1849. This is not to say, however, that the practice laid down by the *How* case was thereafter followed in the civil courts. Indeed, we think the contrary was the case.

The only reported civil cause touching upon the point is *Smith v. Day* (Smith's Administrator), 2 *Penn.* 245, 45 *A.* 396, 397, in which the court permitted counsel for one side to waive a particular challenge which should have been made at a particular time, and ruled that, thereafter, the party could exercise the remaining unexhausted challenges. The precise point before us did not arise, but if any implication on the point is to be drawn from the reported case, it is that such unexercised challenges may be utilized only to challenge substitute jurors drawn, and not those already seated in the jury box at the time the waiver took place in view of *State v. Brown* and *State v. Lynn.* It is clear to us that the language of Chief Justice Lore in the *Smith* case, that "if in a civil case you fail to challenge, you waive your right as to that one, not as to the remainder", refers to the number of challenges only, and not to the members of the jury subject to challenge.

In any event, we think we should not overturn the settled practice of the Superior Court upon the strength of a statement in an 1849 decision which, as far as it is possible now to determine, was never thereafter followed. We have great deference for the work on Delaware Practice written by former Judge Woolley, but in this instance we must conclude that the statement in Judge Woolley's text citing the *How* case was inadvertently included since, at the time the text was written, the undoubtedly established practice prevailing in the Superior Court was to regard the failure to exercise a remaining challenge as a waiver not only of the particular challenge, but of the right to challenge any of the jurors then seated in the box. Judge Woolley must be presumed to have been aware of the practice since he served at different times both as Prothonotary and as Associate Judge of the Superior Court. His text, to the contrary

in this respect, is an obvious error thus forcing the conclusion that, like Homer, he, too, sometimes nodded.

Furthermore, we are of the opinion that if our decision in this appeal was unembarrassed by *How v. Chesapeake & Delaware Canal Co., supra,* and the present practice followed in the Superior Court, we would be bound to construe the statute granting peremptory challenges to parties in civil causes as being in accord with the present established practice in the Superior Court. We would reach this result because in our view it is the more logical and preferable one, since, otherwise, sparring between the parties might well follow. What, for example, would be the result if both parties waived their initial challenges? Would the Prothonotary thereafter be required to submit the list of jurors alternatively to the parties for five successive times in order to establish six waivers of the granted right of peremptory challenges? The answer is obvious—the General Assembly could not have intended a civil jury to be drawn in such a manner as to require empty gestures from the parties. The right was granted in order to permit a party to challenge any juror who, to his mind, was distasteful to him without the necessity of assigning legally sufficient cause for his challenge. Once that opportunity has been afforded, the statutory mandate has been followed. We think it would be unfortunate to afford the right in a manner which would permit shadow-boxing between the parties when drawing a jury. The proper way to enforce the right is to require a party to exercise his right of challenge of jurors actually drawn when the opportunity arises, and if he decides not to do so at that time, to regard that failure as evidence of his satisfaction with the jurors then drawn and the waiver of his right to challenge any of them.

The judgment below is affirmed.