**STATE of Maine**

**v.**

**Richard LIZOTTE.**

Supreme Judicial Court of Maine.

Jan. 27, 1969.

Richard A. Foley, Asst. County Atty., Augusta, for plaintiff.

Berman, Berman & Simmons by Jack H. Simmons, Lewiston, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE, and WEATHERBEE, JJ.

MARDEN, Justice.

On appeal from the denial of respondent's motion for a new trial and upon other points listed in the opinion.

Appellant was charged with breaking and entering in the nighttime of Cottle's Augusta Market, Inc., and larceny therefrom of property in the excess of the value of one hundred dollars. Based upon objections taken during trial, motions for acquittal and a new trial, which were denied, 20 points of appeal were recorded, which for briefing and argument were consolidated within nine issues which will be treated seriatim.

"1) Did the Court err in denying respondent's challenge to the array?"

The venire from which the trial jury was selected, was summoned under the provisions of 14 M.R.S.A. §§ 1254, 1255, which governed the selection of jurors prior to October 7, 1967. As of that date sections 1254 and 1255 were repealed and replaced by Chapter 336 of the Public Laws of 1967, enacted prior to July 7, 1967. The repealing and replacing act established new pro-

cedure for the calling and selection of jurors, among which were the requirements that municipal officers of the several municipalities should make, certify and file a complete list of registered voters of such municipality with the jury commissioners of their respective counties on or before June first of each year, that the jury commissioners should in July of each year select at random the names of a necessary number of persons to constitute a jury pool, summon those ultimately selected for jury duty by registered mail, and limit the service of a juror to a period of not more than two weeks, except as necessary to conclude a case on which he was sitting.

Inasmuch as 8 terms of court convened in October, 1967, four on the first Tuesday (October 3), and four on the second Tuesday (October 10), the impracticability of some of the provisions of Chapter 336 became apparent. By Chapter 494 § 30 (P.L.1967) enacted at the same regular session of the legislature, it was provided that for 1967 the duties imposed upon the municipal officers and the jury commissioners might be performed "at a time other than during June and July." Later it was noted that due to the convention of terms of court on October 10th the mandate that jurors for that term be called by registered mail might not be timely. The Legislature at its first special session, October 2, 3, 1967, by Chapter 498 (P.L. 1967) amended Chapter 336 to provide that prospective jurors *might* be called by registered mail, and by Chapter 510 (P.L.1967) amended the two week period of service to "15 days in which the jury actually reports to the court for duty."

The October Term 1967 of the Superior Court for Kennebec County convened on October 3, 1967 and the venire for that term was called under the provisions of 14 M.R.S.A. §§ 1254, 1255, and was sworn on October 3, 1967. The first jury-considered case was on October 12, 1967, and the respondent was tried on October 30, 1967. Following arraignment on that date,

appellant challenged the jury array because it had not been called under the provisions of Chapter 336, and because it had served longer than the time therein provided. The presiding Justice ruled that the venire was properly constituted, and proceeded to impanel a jury from it.

■ There was no error. The venire was formed and qualified under the law existing at the time of its formation. The period of service of such jurors was not limited.

The decision in People v. Lembke, 320 Ill. 553, 151 N.E. 535 (1926), urged upon us as controlling, is not apt.

"2) Did the Court err in refusing to allow the respondent's peremptory challenge of Juror # 23, June Lucas?"

By the procedure adopted at this trial for the impaneling of the jury, twelve names were drawn from the venire, following which, at side bar, challenges for cause were exercised, the vacancies thus created were filled, and thereafter peremptory challenges invited. The State had no peremptory challenges. Defense challenged two jurors peremptorily and indicated to the Court that when the vacancies caused by these challenges were filled, he might wish to exercise an additional peremptory challenge to one of those of the original twelve. He was advised by the Court that any challenges not then made to those among the twelve first drawn would not thereafter be allowed. Defense recorded an objection to the Court's prospective ruling, but thereupon exercised two more peremptory challenges. Subsequently, after the drawing of four additional names from the venire, to fill vacancies caused by the exercise of these challenges, these replacements being passed for cause, State passed on peremptory and defense counsel challenged Juror # 23, one June Lucas, who was of those in the original drawing of twelve. The challenge was denied and objection noted.

■ Review of this issue involves interpretation of Rule 24, Maine Rules of Criminal Procedure (M.R.Crim.Proc.) and associated legislation. An accused is constitutionally entitled to an impartial jury. He is entitled to no more and can be required to accept no less. Among traditional methods to insure impartiality in a jury is the right to challenge, for cause or peremptorily, but "(t)he right of challenge is the right to exclude incompetent jurors, not to include particular persons who may be competent." United States v. Chapman et al., 158 F.2d 417 [2–4], 419 (10th Cir., 1947). See also Hanson v. United States, 271 F.2d 791 [2, 3], 793 (9th Cir., 1959).

■ As to peremptory challenges, here in issue, "(w)here the subject is not controlled by statute, the order in which peremptory challenges shall be exercised is in the discretion of the court." Pointer v. United States, 151 U.S. 396, 410, 14 S.Ct. 410, 415, 38 L.Ed. 208 (1894); followed in Philbrook et al. v. United States, 117 F.2d 632 [1–5], 635 (8th Cir., 1941); Hanson, supra; United States v. Mackey, 345 F.2d 499 [1], 502 (7th Cir., 1965); Tierney v. United States, 280 F. 322 [1–4], 324 (4th Cir., 1922), cert. den. 259 U.S. 588, 42 S.Ct. 590, 66 L.Ed. 1077. See also State v. Pike, 49 N.H. 399, III p. 406 (1870); State v. Flint, 60 Vt. 304, 14 A. 178, 2. p. 184 (1888); Commonwealth v. White, 208 Mass. 202, 94 N.E. 391, 393 (1911); and Hicks v. State, 199 Ind. 401, 156 N.E. 548, 1st Col. 549 (1927).

In anticipation of our M.R.Crim.Proc., effective December 1, 1965, and thereafter prior to the time of this trial, there were statutory changes dealing with the impaneling of a jury,[1] so that at the time of the trial under review, the statute, 15 M.R.S.A. § 1258, read in pertinent part as follows:

"When a person charged with a criminal offense, * * * is put upon his trial, the clerk, under the direction of the court, shall place the names of all the traverse jurors summoned and in attendance in a box upon separate tickets, and the names, after being mixed, shall be drawn from the box by the clerk, one at a time. The Supreme Judicial Court shall by rule provide the manner of exercising all challenges, and the number and order of peremptory challenges."

Rule 24 M.R.Crim.Proc.,[2] after providing for voir dire of the prospective jurors by Court and counsel, as a basis of challenges for cause, provided in 24(c) for peremptory challenges as follows:

"(1) Manner of Exercise. Peremptory challenges shall be exercised by striking out the name of the juror challenged on a list of the drawn prospective jurors prepared by the clerk.

"(2) Order of Exercise. In any action in which both sides are entitled to an equal number of peremptory challenges, they *shall* be exercised one by one, alternatively, with the state exercising the

---

1. Prior to the effective date of the rules the practice of drawing a jury and the number and exercise of peremptory challenges were provided in 15 M.R.S.A. §§ 1258, 1259 and 14 M.R.S.A. § 1302. This statute reflected the common law practice.

In anticipation of the M.R.Crim.Proc., P.L.1965 Chapter 356 § 47 substituted a new § 1258 and § 1259.

Section 14 of the same Public Laws eliminated the peremptory challenge to the panel theretofore allowed by 14 M.R.S.A. § 1302, in criminal cases,— inasmuch as the peremptory challenges under the rule "are, in effect peremptory challenges from the panel." Section 24.1 Maine Practice, Glassman.

At this point in the application of the statute and Rule 24 it was soon felt by the Bar that prejudice might result from a procedure which permitted prospective jurors, subject to ultimate challenges, to be "seated" among the twelve first drawn for the time required to justify challenges for cause on individual voir dire or peremptorily. As a result, the 1965 Legislature in Special Session (January 1966) enacted P.L.1965 Chapter 482 as an emergency measure which, in Section 1, further amended Section 1258, as amended. This amendment was effective January 31, 1966.

2. Following the pattern of Rule 24, Federal Rules of Criminal Procedure.

first challenge. * * * (emphasis added.)

*"(3) Number.* * * * In all other felony prosecutions (other than those punishable by life imprisonment) each side shall be entitled to 8 peremptory challenges. * * *."

Application of this statute and rule by judicial discretion met all that the accused could demand.

■ The presiding Justice elected, without objection (see Philbrook, supra, 2d col. p. 634 of 117 F.2d), to draw twelve prospective jurors and after the exercise of challenges for cause, and the filling of the vacancies so created, a panel of twelve was presented for peremptory challenges,—but for which this panel would have constituted the regular jury. This was the panel presented for comparative challenges. The record discloses that counsel had the benefit of questionnaires returned by the veniremen. See Browne v. United States, 145 F. 1, 7 (2nd Cir., 1905). The acceptability of these twelve was determinable. The record does not suggest that counsel did not have "a list of the drawn prospective jurors prepared by the clerk." While the rule established the order in which peremptory challenges were to be exercised, it did not thereby abrogate the inherent discretion of the Court to apply it. It was defense counsel's opportunity and obligation under the rule to exercise in his turn such challenges to this panel as he proposed. See *Mackey,* supra, I at page 501 et seq. of 345 F.2d in which Federal rule 24 was in issue.

■ There is nothing to suggest that the competency of Juror # 23 underwent any change during the minutes between the Court's warning and the time the deferred challenge was offered. See McDonald v. State, 172 Ind. 393, 88 N.E. 673, 1st col. 675 (1909), and Annot. 3 A.L.R.2d 499, § 8, p. 513.

This procedure and ruling was fair to both sides.

"No defendant has a right to escape an existing mechanism of trial merely on the ground that some other could be devised which would give him a better chance of acquittal." Fay v. People of State of New York, 332 U.S. 261, 67 S.Ct. 1613 [14], 1626, 91 L.Ed. 2043 (1947), reh. denied 332 U.S. 784, 68 S.Ct. 27, 92 L.Ed. 367.

"Each was given, not only the right to make his challenge in his turn, but the right to have his opponent exercise his rights in the prescribed order so long as he had any objection to the panel as then made up." LeBrun v. Boston & M. R. R., 83 N.H. 293, 142 A. 128, 2nd col. p. 130 (1928).

When defense later sought to challenge Juror #23, the Court ruled that failure to challenge Juror #23 when it was his turn to do so, was an acceptance of the juror. In this there was no error. Such circumstances have been held to be an acceptance of the juror, Nicholson v. People, 31 Colo. 53, 71 P. 377, 378 (1903) followed in Weaver v. People, 47 Colo. 617, 108 P. 331, 332 (1910); implicit in Philbrook, supra; and LeBrun, supra, or a waiver of the challenge, Dwyer v. Christensen, 76 S.D. 201, 75 N.W. 2d 650 [11, 12], 654, 56 A.L.R.2d 734 (1956); Le Gro v. Moore, 1 Storey 116, 138 A.2d 644 [1], 645 (Del.1958); Brown v. Marker, 410 P.2d 61 [1–4], 64 (Okl. 1966); and McDonald, supra, 1st col. p. 675 of 88 N.E. (dictum). See also Annot. 56 A.L.R.2d 742, § 2, p. 743.

There is nothing before us to even suggest that the appellant was obliged to submit his case to other than an impartial jury. No constitutional, statutory or court rule was violated. Defense has cited no case in support of his contention to the contrary and while decisions dealing with peremptory challenges are by no means uniform, even as statutes and rules of court in the respective jurisdictions are not uniform, and the breadth of judicial discretion is great, cases may be found to which reference is made in the above citations, which lend him support. Such cases, however, do

not hold that the practice adopted herein was judicially indiscreet. Appellant takes nothing by Point No. 2.

"3) Did the Court err in denying respondent's objection to the state's notice of alibi?

"4) If not, did the Court err in refusing to charge that, in order to convict the respondent, the jury must find that the offense, if it occurred at all, occurred between the hours of 2:00 and 6:00 in the morning?

"5) Did the state fail to prove that the offense occurred between the hours of 2:00 and 6:00 in the morning?"

The State, under Rule 16(b) M.R.Crim. Proc., seasonably served upon the respondent a demand that the defendant in turn serve upon the State a Notice of Alibi if he intended to rely on such defense at the trial. The notice continued:

"The State intends to prove that the acts with which you are charged were committed at Cottle's Augusta Market, Inc., super-market store located on Willow Street, in Augusta, Maine at between approximately 2 o'clock in the forenoon and 6 o'clock in the forenoon of Augusta 4, 1967."

The respondent filed no notice of alibi and the terms of the State's demand are the basis of appellant's points quoted above.

■ Defense contends that the rule requirement "that the demand shall state the time and place that the * * * state proposes to establish at the trial" requires strict construction and that the accused is entitled in such demand to exactitude as to the time and place of the offense upon which State intends to rely. If the appellant means by this that the State must, in its demand, give an exact time at which the offense is alleged to have occurred, there might be instances in which such declaration of intent would be appropriate. In cases, however, such as this, where the condition of the premises involved can be fixed only as of closing time at night and re-entry the following morning, or following a weekend, it would be manifestly impossible to determine at what time during such periods an offense against the premises was committed. Defense by taking appropriate measures is entitled to be heard upon the absence of specificity but here, no such request was made and the wording of the demand in that respect, is moot. The objection to the sufficiency of the notice is without merit.

■ The question of whether or not the demand for notice of alibi is to be equated with specifications under the old practice, which is now incorporated in Rule 7(f) M. R.Crim.Proc., whereby an accused might request a bill of particulars, is raised by points 4 and 5, and it is held that a demand for notice of alibi is equivalent to a bill of particulars. See State v. Hume, 146 Me. 129, 138, 78 A.2d 496, 502; State v. Littlefield, Me., 219 A.2d 755 [1, 2], 757 et seq; ann § 16.4 Maine Practice, Glassman.

"The effect of a bill of particulars is to reasonably restrict the proofs to matters set forth in it." *Hume, supra,* 146 Me. at page 138, 78 A.2d at page 502.

■ Following the presiding Justice's charge to the jury, in which charge the Court pointed out that the State contended that the offense "was done on the early morning hours of August 4, 1967," defense requested that the jury be instructed that it would have to find, "if the offence occurred at all" that it "occurred between the hours of two and six in the morning * * * by reason of their (the State's) request (for) alibi." This instruction was refused.

The instruction requested did not conform to the notice of alibi. The notice did not confine the period of alleged wrongdoing to the four hours between two and six in the morning. The period was expressed as an approximation. The proof permitted the jury to find that the offense occurred between two in the morning, when testimony placed the appellant in Waterville, and six forty-five in the same morn-

ing, when the store manager opened the store for the day.

The presiding Justice did not err in refusing the instruction and there was evidence to permit the jury to find that the offense occurred within the period stated in the notice.

"6) Did the Court err by allowing to be read into the record parts of an affidavit containing hearsay evidence?"

A State's witness testified that the appellant made to him incriminating admissions involving the Cottle burglary. On cross-examination defense counsel referred the witness to an affidavit relative to the case, which he had given on August 18, 1967, and asked the witness if he had stated in the affidavit that Mr. Lizotte (appellant) had made such statements to him. Upon receiving an equivocal reply, defense counsel presented the affidavit to the witness and asked him to refresh his recollection, following which the witness conceded that there was nothing in the affidavit which attributed incriminating statements to Lizotte (appellant) by name.

Over objection, the State on redirect examination offered, and was permitted, to introduce a portion of the reference affidavit, which portion identified 6 persons by name, including the appellant, related that "they" had a substantial sum of money in possession and that "(t)hey all told me they got six thousand dollars in cash * * * in the Cottle's Market break."

The cross-examination by defense counsel is recognized, in general terms, as a process of impeachment of the witness's trial testimony, which testimony directly involved the appellant. By eliciting a reply that in a pre-trial affidavit, which the witness had given, he had not named Lizotte as a declarant of statements attributed to him by the witness at trial, there was created an implication from which the jury could infer that his trial testimony might be re-

cent fabrication or given with improper motives.

Under such circumstance, although authorities are divided, substantial authority holds that the introduction of prior statements of the witness consistent with that of his trial statements is proper, not for the truth of the contents of the statements, but for the proof of the declaration which in itself is a material fact. The prior consistent statement is on its face hearsay as to the truth of the facts stated, but a well recognized exception to the hearsay rule permits such testimony in proof of the fact that such a declaration was made. The principle was recognized in State v. King, 123 Me. 256, 258, 122 A. 578, and declared in State v. Galloway, Me., 247 A.2d 104 (1-4), 106. See also Annot. 140 A.L.R. 21 section V a and b beginning at page 152, and Annot. 75 A.L.R.2d 909 section 42 at page 952,—from which last annotation attention is invited to Travelers Indemnity Company v. Farm Bureau Mutual Insurance Company, 102 N.H. 207, 153 A.2d 794(2), 795 (1959). More recent cases are State v. Rhinehart, 70 Wash.2d 649, 424 P. 2d 906 (1), 908 (1967), State v. Lupino, 268 Minn. 344, 129 N.W.2d 294 (13), 304 (1964), cert. denied November 18, 1965, 379 U.S. 978, 85 S.Ct. 681, 13 L.Ed.2d 569; Commonwealth v. Cohen et als., 203 Pa. Super. 34, 199 A.2d 139 (33, 34), 158 (1964), cert. denied November 9, 1964, 379 U.S. 902, 85 S.Ct. 191, 13 L.Ed.2d 176, and Burns v. Clayton, 237 S.C. 316, 117 S.E.2d 300 (7), 310 (1960).

In the present context the admissibility of pre-trial statements turns upon the nature and extent of the impeachment efforts, and must be measured by the trial court's discretion. Annot. 75 A.L.R.2d supra, section 4 at page 923, *Lupino* and *Cohen,* supra.

Here the admissibility and the extent of the affidavit admitted were discretionary with the trial Justice. The portion which he permitted to enter the record was justified in order to identify who "they" were, what "they" said, whether "they" included

the appellant and ultimately to decide upon the credibility of the witness. This discretion was not abused and there was no error.

"7) Did the state fail to prove the existence of a crime, the corpus delecti, or the ownership of the money?"

█ There was evidence on behalf of Cottle's Augusta Market, Inc., by the store manager and the bookkeeper that when the store was closed at the end of business on August 3rd, all was in order and the proceeds of the day's sales had been deposited in the store safe. When the manager arrived on the morning of August 4 to open the store, he found the safe had been forcibly opened, the cash drawers "strewn about" and, apart from a few checks and coins on the floor, the deposited funds missing. That a burglary or larceny had occurred was clear. The corpus delicti was established within the principles of State v. Wardwell, 158 Me. 307, 321, 183 A.2d 896; State v. Millett, Me., 243 A.2d 721.

█ The ownership and possession of the Market by the named corporation was evidenced by the corporate treasurer and the Market Manager. The deficiency in this respect which was criticized in State v. Oliver, Me., 225 A.2d 398 [1, 2], 401 does not here exist. Appellant takes nothing by point seven.

"8) Was the verdict inherently inconsistent?"

The record discloses uncertainty as to whether the burglar forced an entrance to the Market and committed the theft or whether he concealed himself in the store prior to closing, committed the theft and made a forcible exit. The record presents a jury question on this point, but the presiding Justice in his charge to the jury removed from its consideration the allegation of "breaking and entering" and permitted it to pass only upon the larceny of the funds involved.

█ Appellant argues that inasmuch as the respondent was charged with breaking, entering and larceny, that the forcible entry was removed from the case by Court instruction, and that the presence of the appellant was established as outside the store after it had been secured for the night, the verdict of guilt on larceny was inconsistent with both law and the facts and therefor must be set aside. Defense overlooks facts which would entitle a jury to conclude, as it obviously did, that the appellant though not a party to any surreptitious "entry" into the Market, could nevertheless have participated in the larceny. Upon the record, the jury was competent to so find and such verdict is consistent with both law and fact. Appellant takes nothing by this point.

"9) Did the Court err in failing to grant respondent's motion for a new trial?"

The motion for a new trial was made upon the usual grounds together with reasons expressed in the points of appeal already discussed. For the reasons given above in the discussion of points of appeal the conviction is affirmed.

Appeal denied.