STATE OF MAINE

*vs.*

RAYMOND C. HUME

Kennebec.    Opinion, January 26, 1951.

James L. Reid, *County Attorney for Kennebec County,* State of Maine.

*William H. Niehoff,* for respondent.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J. This is an indictment for breaking, entering and larceny against Raymond C. Hume, alias Raymond Humes, alias Polack Humes. The respondent was found guilty by a Kennebec County jury and the case is now before the Law Court on exceptions and appeal.

The indictment was returned by the Grand Jury at the June Term, 1948, for violation of R. S., (1944), Chap. 119, Sec. 3 in breaking and entering in the nighttime the office at the Maine Central Railroad station at Winthrop and committing larceny therein. The respondent entered a plea of not guilty.

At the February Term, 1949, the respondent was found guilty by verdict of the jury. Exceptions taken to the admission of certain improper testimony were sustained by the Law Court in *State* v. *Hume,* 145 Me. 5, 70 Atl. (2nd) 543, and the respondent was again tried at the February Term, 1950. The pending appeal and exceptions relate to this second trial.

Before the trial the respondent filed a motion for continuance on the ground that prejudicial statements had been published in local newspapers two weeks previously, which he claimed constituted an invasion of his right to a fair and impartial trial. This motion was denied by the presiding justice to which denial the respondent excepted.

On the morning of the second day of the trial, and during the trial, the respondent filed a motion for a mistrial on the ground that a certain article published on that day, appearing in local newspapers, was prejudicial to the rights of the respondent. Exceptions were taken to the denial of this motion.

During the course of the trial several exceptions were filed to the rulings of the presiding justice relative to the admissibility of certain testimony.

This case is here on exceptions to the refusal to grant a continuance, to the refusal to order a mistrial, and on exceptions to the admission of certain testimony, and also on appeal from the denial of a motion, made to the justice presiding, for a new trial.

### FIRST AND SECOND EXCEPTIONS

The first two exceptions are directed to the refusal to grant continuance and the refusal to order a mistrial.

The article in the Kennebec Journal published February 16, 1950, quoted in the motion for continuance, was as follows:

## "HUME TO STAND TRIAL AGAIN AT CURRENT SESSION

Raymond C. Hume, Augusta, will stand trial for a two and a half year old charge during the present term of Superior Court, according to a statement made Wednesday by County Attorney James L. Reid. The 53 year old local restaurant proprietor was found guilty in February of last year by a Superior Court jury of a charge of breaking, entering and larceny into the Winthrop railroad depot in 1947. The County Attorney in a prepared statement stated he was asking for a new trial on the conclusion that 'the question of the innocence or guilt of Hume is for the jury to determine.' Hume had been granted a new trial by the Law Court after filing exceptions.

Hume was sentenced to serve 6 to 12 years in State Prison by Justice Arthur E. Sewall.

His attorney William C. Niehoff of Waterville, filed exceptions to certain legal aspects of the trial. Referred to the Law Court, the exceptions were upheld by Maine's Chief Justice Harold H. Murchie.

He was then granted a new trial. He had been released under $20,000 bail pending the outcome of the filed exceptions which, when filed by the Law Court, could have resulted in a dismissal of the charge.

Reid's full statement is as follows: 'After reviewing the opinion of the Law Court and reviewing the evidence, and after consultation with the presiding justice (Justice Donald W. Webber), I have concluded that the question of the innocence or guilt of Raymond C. Hume is for the jury to determine and therefore I shall ask for a trial.

'The decision of the Law Court hinged on a statutory amendment relating to the admissibility of certain evidence and does not appear to me to have significantly changed the jury aspect of the case.'

> The retrial was granted by the Law Court on the grounds that the court (Justice Sewall) erroneously admitted certain evidence with respect to the credibility of certain trial witnesses."

The article as published on February 16, 1950 in the Waterville Morning Sentinel was, in substance, the same as in the foregoing article from the Kennebec Journal. The second article published during the trial on March 2, 1950 in both of the above named newspapers, for which mistrial was asked, rehearsed the fact that the case had been previously tried and the new trial granted, and in addition made a summary of the evidence introduced by the state during the first day of the trial.

There was no claim made that any of the newspaper articles contained any statement other than the truth, and the greater portions were matters of public knowledge and court record. They were not "inflammatory" and not intended to prejudice. The statement by the County Attorney and other statements therein, might or might not influence the decision of some juror if he read the accounts, depending of course on the mental capacity of the juror, his power of analysis, and his sense of fairness. It does not appear, however, that any one of the jurors ever saw any one of the newspaper articles published before or during the trial.

In ruling upon the motion for mistrial the presiding justice stated to counsel that the press reports were in accordance with the records and "within the domain of public knowledge." The presiding justice also said that "opportunity was afforded to counsel for the state and the respondent to further examine as to the impact of any prior readings of press reports pertaining to the case, or any other conversation or outside influence upon the mind of the jury. In each case the court is satisfied that the jury has retained an open mind in spite of prior publicity as to the course of this particular litigation. This court feels that at the most

the newspaper report now in question can only refresh the recollection of the jury as to what was already part of the public knowledge at the time of the original trial and sentence."

There is not the slightest indication in the record that any member of the panel was prejudiced by any newspaper account. In fact, as previously stated, it does not appear that any juror read, or had knowledge of, any newspaper article relating to this case. The fact that some newspaper account might prejudice some one who could be, or was, a juror, is not sufficient to show that a juror who was drawn was so prejudiced.

Continuances and mistrials are within the discretion of the presiding justice. *Cunningham* v. *Long,* 125 Me. 494, 497; *Collins* v. *Dunbar,* 131 Me. 337; *Bank* v. *Shaw,* 79 Me. 376; *Graffam* v. *Cobb,* 98 Me. 200; *Rumsey* v. *Bragg,* 35 Me. 116. In the absence of anything tending to show that this discretion was not properly exercised, the ruling is not subject to valid exceptions. *Fitch* v. *Sidelinger,* 96 Me. 70, 71. "The chief test as to what is or is not a proper exercise of judicial discretion is whether in a given case it is in furtherance of justice. If it serves to delay or defeat justice it may well be deemed an abuse of discretion." *Charlesworth* v. *Express Co.,* 117 Me. 219, 221, see also *State* v. *Bobb,* 138 Me. 242; *Bourisk* v. *Mohican Co.,* 133 Me. 207.

In the light of the rules stated in the foregoing cases, and after careful examination of the record, we fail to see any abuse of discretion on the part of the presiding justice in refusing to grant a continuance or to order a mistrial. In fact no second trial can be had in any case if truthful newspaper accounts of a former trial can be seriously taken as ground for continuance or mistrial, without some evidence of probable prejudice resulting. There must be "palpable error" or "apparent injustice" to make a discretionary ruling reviewable. *Fournier* v. *Tea Co.,* 128 Me. 393. The right of

exception arises only where there is clear abuse of discretion and the burden to prove such abuse rests on him who alleges it. *Lebel* v. *Cyr*, 140 Me. 98, 102.

## THIRD EXCEPTION

The third exception was taken to the admission of certain testimony given by one Lawrence Minot, a deputy sheriff, who stated that on the morning of November 8, 1947 he was notified of a "break" at Belgrade depot and that he went there and found a "window jimmied" and "money box gone." This evidence was objected to on the ground that evidence was not admissible of any break in any place outside of the town of Winthrop. The court admitted this evidence, however, as one event in a chain of circumstances which the County Attorney said he should prove, "with the understanding that the guilt or innocence of this respondent as to any break in Belgrade is not an issue here." The evidence was not offered to show that the respondent broke into the Belgrade depot. In fact, there was no mention, by deputy Minot, of any particular person breaking into it. He stated there was a break at Belgrade, and the state contended that this was but a chronological link in a one night's chain of events.

The state endeavored to show a criminal enterprise from the time the respondent started with one Thomas and one Hendley from Waterville. To prove this, the state used (1) the testimony of Thomas, an alleged accomplice, (2) a series of facts and circumstances by other witnesses tending to corroborate the testimony of the accomplice, and (3) admissions by conduct and statements of the respondent. It was admitted that Hendley was an incompetent witness due to mental condition. The respondent did not testify, as was his right and privilege. It further appeared that the respondent had been, at a previous term, placed on trial for committing the Belgrade break, and had been found not guilty by the jury.

The evidence introduced by the state was to the effect that the respondent Hume (or Humes) on November 7, 1947 needed money, and called on Thomas at Thomas' store in Waterville about 6 P. M. The respondent proposed that they make "a break" and Thomas agreed, provided it was at some place outside of Kennebec County. Hendley was working in the woods, and Thomas and the respondent, Hume, went to get him. The three started for Wiscasset in Lincoln County. About 10 P. M. a fire warden at Wiscasset ordered them to move from the place where they had stopped the car, and this fact discouraged a proposed break in Wiscasset, so they returned and parked the car for a time in a gravel pit in Belgrade. Thomas testified that he (Thomas) broke into the station at Belgrade and obtained $35.00 or $40.00 which was considered a too small amount, and the three men went to the Winthrop station. It is apparent from the record that the state refrained from asking questions of the witness, Thomas, tending to implicate the respondent in any Belgrade break, but the attorney for the respondent did ask Thomas on cross examination (after being warned by the court) several questions that tended to show that the respondent was in the town of Belgrade and with Thomas at the gravel pit.

The trio arrived at Winthrop station about 3 o'clock in the morning of November 8, 1947. Hendley stood guard outside the railroad station, while the respondent and Thomas broke into the station. The railroad money box was thrown into a stream on the way home, and found by the officers on being directed there by Thomas some time after.

This third exception, to the testimony of deputy sheriff Minot that there was a break in the station at Belgrade was not evidence that this respondent made the break. In fact, there was no evidence introduced by the state to prove this respondent guilty of breaking into the Belgrade station. On the contrary, the evidence regarding the Belgrade break

that crept into this case, despite all effort on the part of the court and state's attorney to prevent, showed Thomas, and only Thomas as the guilty person at Belgrade. The evidence was presented to show that the sheriff's department learned of this break first. It was also for the purpose of confirming testimony expected to be given by the accomplice Thomas. The logical order of presentation may not have been followed, but the rights of this respondent were fully protected in the charge, to which no exceptions were taken. The order in which testimony is introduced is within the discretion of the presiding justice. *State* v. *Trocchio*, 121 Me. 368, 378.

If it had been error to admit this testimony of deputy Minot, or to admit it out of the usual order at the beginning of the trial, it was harmless. It was not evidence that the respondent was involved. The whole record shows that any evidence in the case that tended in any way to implicate the respondent with complicity in the Belgrade break was first brought out by the attorney for respondent himself, in cross examination of the state's witnesses. The attorney for respondent, in fact, asked the accomplice Thomas several times if "Hume was with you (Thomas) all the time after you left Waterville."

## FOURTH EXCEPTION

The accomplice witness, Russell Thomas, in relating the events of the night testified that they first went to Wiscasset. This was objected to on the ground that this fact was not specified in a bill of particulars filed by the state, and that the attorney for the state should be confined to evidence as to only what occurred in the town of Winthrop. The presiding justice admitted the testimony because the bill of particulars stated that they travelled to Winthrop, although it did not state the exact route, and furthermore, that the bill had been on file in the clerk's office long enough

for the respondent to have asked for further particulars had he desired.

The record shows that the bill of particulars was ordered filed, on motion by attorney for the respondent, and was filed on or before February 5, 1949. A letter was also written by the County Attorney to the respondent's attorney on February 4, 1949 enclosing a copy of the bill of particulars, and stating to the respondent's attorney that if he required any further particulars to make the request, and the County Attorney further stated in his letter, "you have the burden of letting me know what you want so I won't have to guess." This letter of the County Attorney was not answered.

We see no merit in this exception. The accused, in a criminal case at common law, is not entitled as a matter of right to a bill of particulars. The reason is that in criminal cases there is directness and particularity in the averments of the indictment, and there is no need, generally, for a statement of the matters to be given in evidence to be furnished to the respondent. The court may, however, in its discretion require a bill of particulars to be filed. *Commonwealth* v. *Snelling*, 15 Pick. (Mass.), 321; *Commonwealth* v. *Wood*, 4 Gray (Mass.), 11; *Commonwealth* v. *Davis*, 11 Pick. (Mass.), 432, *27 Am. Jur.* "Indictments," 671, Sec. 111, *42 C. J. S.*, 1093, Sec. 156 citing *State* v. *Haapanen*, 129 Me. 28.

The ordering of a bill of particulars to be furnished in a civil or a criminal matter rests within the sound discretion of the court having regard to the nature and circumstances of the case. See for civil cases, Rules of Court, *129 Me. 506, 507*, and in criminal cases, *Commonwealth* v. *Giles*, 1 Gray (Mass.), 466; *Commonwealth* v. *Hayes*, 311 Mass. 21.

The effect of a bill of particulars is to reasonably restrict the proofs to matters set forth in it. The construction placed on a bill of particulars, however, should not be "too narrow." It should be "fairly construed." A bill of par-

ticulars in a civil or criminal case may be amended by the party filing the bill of particulars, within the discretion of the court in the furtherance of justice. *Commonwealth* v. *Mannos*, 311 Mass. 94; *Commonwealth* v. *Hayes*, 311 Mass. 21; *Fox* v. *Conway Ins. Co.*, 53 Me. 107; *Baxter* v. *Macgown*, 132 Me. 83; *Bean* v. *Fuel Co.*, 124 Me. 102. Any insufficient bill of particulars may also be ordered amended or made more precise and definite on motion. A statement of the excepted testimony to be introduced or names of witnesses, need not be given therein. The bill of particulars is not a set of interrogatories, nor is it employed to compel the state to disclose all its material evidence for conviction. *Commonwealth* v. *Giacomazza*, 311 Mass. 456, *42 C. J. S.* "Indictments," 1092, Section 156, *27 Am. Jur.* "Indictments," 671, Sections 111-114, *31 Corpus Juris* "Indictments," 750.

## FIFTH EXCEPTION

This exception is to the admissibility of certain testimony which the respondent claims tended to show that he was guilty of an offense other than as alleged in the indictment. The accomplice witness Thomas on redirect examination was allowed to testify as follows:

> Q. "Mr. Niehoff asked you whether or not at all times Mr. Humes was with you? Is that so?"
>
> A. "Yes."
>
> Q. "Did he go to the depot with you?"
>
> A. "Yes."

Attorney Niehoff, for respondent, objected that this testimony was not relevant to the Winthrop break and that the respondent had been acquitted of the break at Belgrade.

We find no abuse of the discretionary power of the court. It is well settled that on redirect examination a witness may be interrogated to clarify or explain matters brought out on cross examination by the opposite party, even though it

may happen to bring out adverse information. *William* v. *Gilman,* 71 Me. 21; *Pelkey* v. *Hodgdon,* 102 Me. 426; *State* v. *Sprague,* 135 Me. 470. The determination of relevancy and materiality rests largely in the discretion of the presiding justice. *McCully* v. *Bessey,* 142 Me. 209, *49 Atl. (2nd)* 230; *Torrey* v. *Congress Square,* 145 Me. 234, *75 Atl. (2nd)* 451. Even a repetition is not exceptionable. *Caven* v. *Granite Company,* 99 Me. 278. By leave of court and in it discretion, cumulative evidence is also admissible in rebuttal. *Pillsbury* v. *Kesslen Shoe Co.,* 134 Me. 504. Relevant evidence to support a charge may be received within the court's discretion although it may tend to show that the respondent committed another offense not charged or "that the acts charged are part of a common scheme." *22 C. J. S.,* 1109, Sec. 688 and cases cited; *Commonwealth* v. *Corcoran,* 252 Mass. 465, 478; *State* v. *O'Toole,* 118 Me. 314; *State* v. *Smith,* 140 Me. 255.

All evidence from whatever source in a conspiracy charge is admissible to prove concerted action and unlawful purpose, "precisely the same as similar evidence would be admissible to prove a combination or concerted action or unlawful purpose upon any other charge, either civil or criminal." *State* v. *Trocchio,* 121 Me. 368, 376.

The fact that the respondent had been found not guilty of making a break at Belgrade does not necessarily make testimony inadmissible, in another charge, that he was in Belgrade at or about the time of the break in Belgrade. The testimony introduced by the respondent himself, to show an alibi, places him in a gravel pit in Belgrade in the early morning. Thomas was admittedly the only guilty person at Belgrade, and the evidence introduced in this case does not tend to show guilt at Belgrade on the part of this respondent. There is no conspiracy charged in the indictment, but evidence may be admitted, in judicial discretion, to show "a combination or concerted action or unlawful purpose" in any other charge. *State* v. *Trocchio,* 121 Me. 368,

376; See also *State* v. *Smith,* 140 Me. 255. The jury knew that the respondent had been declared not guilty of a break at Belgrade and knew that the evidence in the case at bar was directed to the Winthrop break. "Evidence of collateral facts may be received in civil and criminal cases for the purpose of confirming witnesses." *State* v. *Witham,* 72 Me. 531, 538. The legal rights of the respondent were fully protected during the trial and also in a very clear and careful charge to which no exceptions were taken.

## SIXTH EXCEPTION

One Raymond Hall, who was on the fire patrol the night of November 7, 1947 near Wiscasset, testified that he saw a car parked at about 11 P. M. This testimony was introduced for the purpose of confirming the testimony of the accomplice who said that he and respondent were parked in Wiscasset. There were in the car several occupants. Hall ordered them to move on. This testimony was objected to because the respondent was not identified as one of the occupants of the car, and the car was not identified.

The admission of this testimony rested within the discretion of the presiding justice and we see no abuse of discretion. It was a matter for the jury's consideration with relation to other facts which may or may not have been proved. *McCully* v. *Bessey,* 142 Me. 209, *49 Atl. (2nd)* 230; *Torrey* v. *Congress Square,* 145 Me. 234, *75 Atl. (2)* 451; *State* v. *O'Toole,* 118 Me. 314; *State* v. *Smith,* 140 Me. 255; *State* v. *Sprague,* 135 Me. 470; *State v. Merry,* 136 Me. 243; *State* v. *Trocchio,* 121 Me. 368, 376.

## SEVENTH EXCEPTION

Harry Pinkham, sheriff of Kennebec County, testified that he received word from deputy sheriff Lawrence Minot of an automobile, licensed as number 40-146, having been at the gravel pit at the town of Belgrade in the early hours of No-

vember 8, 1947. This car was registered in the name of Florence Whittier of Augusta. The sheriff called on Florence Whittier and found the respondent Hume at her home with her. In answer to questions by the sheriff, respondent Hume stated to the sheriff that he had the car and "the car was with me all night at Togus Pond." "I have not been in Belgrade for five years." Later in the day, Hume told the sheriff that "I lied to you this morning * * * I was down to Newcastle. I had another fellow with me and two girls * * * a fire warden came by who said you cannot park here." Sometime later the respondent told the sheriff: "If the car was there I was there, but I was not there." When still later the respondent, confronted at the sheriff's office with two boys who had seen the car at the gravel pit in Belgrade, the respondent was very angry, and said he was being "persecuted." The attorney for respondent asked to have this testimony stricken from the record because it referred to Belgrade. The County Attorney stated it was not for the purpose of showing anything in regard to the break at Belgrade (as in fact it did not) but to show respondent's conflicting stories. Exceptions were taken to the refusal to strike.

This evidence would appear to be relevant, or at least it appeared so to the presiding justice, and we see no reason to disagree with his decision. As in previous exceptions, it related to matters within the court's discretion and there was no abuse.

## EIGHTH EXCEPTION

Harry Pinkham, the sheriff, on redirect was asked this question: Q. "You were asked where the word 'Polack' came from. Now tell the whole story." The sheriff then testified, subject to objection, that when he heard that Hendley, "Monk" and "Polack" made the break at Winthrop he (the sheriff) did not know who "Polack" was. He talked with Hendley and showed him twelve photographs of indi-

viduals who had been photographed in jail, and Hendley picked out the photograph of the respondent.

This evidence related to the identification of a photograph of the respondent which was in the sheriff's possession. We fail to see wherein the respondent was prejudiced or aggrieved. *Simoneau* v. *Livermore,* 131 Me. 165.

## APPEAL

A careful examination of each and all of the respondent's exceptions fails to disclose any exceptionable error, which brings us to a consideration of his appeal from the denial by the presiding justice of motion for a new trial. Revised Statutes (1944), Chap. 135, Sec. 30.

The evidence produced by the state to prove the guilt of the respondent for the Winthrop break came from Russell Thomas who testified that the crime was committed by the respondent, Joe Hendley, and himself. The state produced facts and circumstances which tended to show that the story of the accomplice Thomas was true. There were also claimed admissions, by respondent, in statements and by conduct. The respondent did not testify, but introduced the testimony of several witnesses who testified that the respondent on the night in question was first at an Augusta restaurant in company with another man and two women; that afterwards he was with Florence Whittier until about midnight, and still later, and until two o'clock in the morning; he was drinking beer with Yvette Breton Derouche at Augusta, and while parked with Yvette Derouche in a gravel pit near Belgrade.

Except where the statutes or constitution provide otherwise, the rule is that a conviction may be sustained in a criminal case on the uncorroborated evidence of an accomplice, but such testimony is always received with caution. The testimony of the witness is for the jury, and, if his testimony convinces beyond a reasonable doubt, they are

authorized to find guilt. *State* v. *Morey*, 126 Me. 323; *Sinclair* v. *Jackson*, 47 Me. 102.

In this case, "Monk" Thomas, by his own admissions, had a long criminal record, and the principal question the jury had to determine was whether Thomas was truthful in stating that the respondent was with him on the night of November 7 and 8, 1947, or whether the respondent was with two girls and another man. The story told by Thomas, if believed, would authorize the jury to find the respondent guilty as charged, and guilty beyond all reasonable doubt. The state did not rely wholly upon the testimony of Thomas, the accomplice, but introduced other testimony to support Thomas. If the supporting evidence is believed, inferences can be drawn that corroborate Thomas in many particulars. On the other hand, if the testimony produced by the respondent can be taken as true, the respondent has a perfect alibi.

The presiding justice in his charge gave full instructions concerning the caution to be exercised in viewing the testimony of an accomplice. The evidence presented jury questions and the jury was amply justified in the verdict.

We are compelled to say, as did Justice Pattangall in *State* v. *Morey*, 126 Me. 323, 329, "that a study of the whole case forces the conclusion that no innocent man was wronged." We can also say that the respondent had a fair trial and we find no errors.

*Exceptions overruled.*

*Appeal dismissed.*

*Judgment for the State.*