STATE of Maine

v.

Reginald J. BERUBE.

Supreme Judicial Court of Maine.

Dec. 15, 1972.

Richard S. Cohen, Chief, Crim. Div., Malcolm L. Lyons, Asst. Atty. Gen., Augusta, for plaintiff.

Harold J. Shapiro, Jeffrey A. Smith, Gardiner, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEBBER, Justice.

Appellant Berube stands convicted of murder. His appeal raises several legal issues for our consideration.

### Change of Venue

In the early morning hours of May 9, 1968 Omar A. Goding was brutally murdered at the brickyard in Auburn operated by the corporation of which he was president. This event was the subject of a newspaper account prominently displayed on the front page of the Lewiston Evening Journal of that date. The Lewiston Daily Sun, a morning paper, and the Journal, both having widespread circulation in Androscoggin County, continued their daily coverage of events as they transpired. On May 13, 1968 the Sun was able to report that the appellant and one Turner had been arrested and charged with the murder of Mr. Goding. The Journal of that date reported proceedings in the District Court in which counsel were appointed by the Court and the defendants held without bail for later arraignment. This Journal story carried pictures of the defendants as they arrived in District Court in handcuffs and under police guard. On May 14, 1968 the Journal carried a back page story reporting that on the preceding day the grand jury in Cumberland County had returned an indictment charging Turner with an unrelated break—but there was no reference to appellant in this account. In a separate story on the same page there appeared a brief recapitulation of the arrest and charge. On May 15, 1968 the story had moved to an inside page where it was reported that the probable cause hearing had been continued until May 21, 1968. The Journal of May 16, 1968 described a rumor that arrests had resulted from a "tip" but the reporter candidly admitted that he had encountered a "police embargo on information" and was unable to get any prosecuting official to comment. The last news story complained of by appellant appeared on the front page of the Journal on May 21, 1968 and reported the proceedings in the District Court where the defendants

were arraigned and bound over after hearing was waived. The story gave particular attention to the "extreme precautions" taken by direction of the Court to maintain security.

On July 2, 1968 appellant filed motion for change of venue based exclusively upon the newspaper coverage above described. There is no indication that appellant desired or was deprived of an opportunity to adduce additional evidence in support of the motion. The motion was denied by written order on August 15, 1968.

Proceedings to select a jury began on September 17, 1968, almost four months after the cessation of the newspaper publicity complained of. There is no suggestion in the record before us that any unusual difficulty was encountered in selecting twelve jurymen and two alternates acceptable to both the State and the two defendants. We are presented with the *voir dire* record only as to those persons who were selected to serve. These individuals had at most only a vague recollection of the publicity and in no case had formed any opinion as a result of it. We assume that if the *entire voir dire* record had disclosed a climate of hostility toward the appellant, that record would have been presented to us.

■■■ The news media have a right and a duty to report important community events factually and truthfully as they transpire. They have a like obligation not to slant or color the news in such a way as to create an atmosphere of hostility or prejudice against an individual which will render it virtually impossible for him to receive a fair trial in the forum where the crime was committed. Perhaps in part because of the admonitions contained in our opinion in State v. Coty (Me.—1967) 229 A.2d 205, 210, 212 the newspaper publicity in this case met every reasonable standard of fair reporting and the "no comment" stance of the prosecuting officials was most commendable. Our summation of the impact of the newspaper publicity in Coty is fully applicable here.

"* * * the balance of pretrial publicity contained little more than normal and factual coverage of the news with respect to these murders. It lacked the continuous and persistent vehemence and intensity which tends to infect a whole community. It had virtually subsided about three weeks after the crimes were committed and over three months before the trial began. Moreover, the *voir dire* can be fairly assumed to have disclosed no prejudice or fixed opinion on the part of the jurors selected to sit; * * *."

The Court below did not abuse its discretion in denying a change of venue on the evidence presented.

## Motion to Suppress Evidence

■■■ The police conducted two searches of appellant's apartment, each under search warrant issued by a magistrate. The application for the first warrant was supported by the affidavit of the Chief of Police. The information therein stated was based in part on the investigation and personal observations made by the affiant at the scene of the crime and in part upon information imparted by an informer, one Raymond Cote. Cote was identified by name and was shown to be the driver of the automobile which transported Berube and Turner to the brickyard and delivered them to their homes thereafter. Cote disclosed that defendant's admitted purpose in going to the brickyard was to break and enter the office of Morin Brick Company, and further that on reentering Cote's car Berube admitted that he had just killed a man. Cote's reliability as a named informer was further supported by the fact that he had furnished information "as to the whereabouts of the suspected murder weapon used in the murder of Omar A. Goding which in fact was found in the location indicated by the said Raymond Cote." The purpose of the first search was to look for items of clothing of the appellant stained with mud, clay or blood which would constitute corroborative circumstantial evidence of Berube's presence and participation in the crime. The first warrant also authorized a search for cer-

tain items of property found to be missing from the office of Morin Brick Company. The affidavit furnished an adequate basis for the magistrate's finding of probable cause and issuance of the first warrant. During the search under the first warrant (which was otherwise unproductive), the investigating officer observed in plain view on the top of a chest of drawers in the bedroom of appellant's apartment a short and broken length of gold chain. An application was then made for a second warrant to authorize search for and seizure of this fragment of chain. The essential underlying facts set forth in the first affidavit were here repeated but additional information was set forth in the second affidavit. It was disclosed that the affiant had found at the brickyard a similar but somewhat longer broken piece of gold chain with a religious medal attached. The information provided by the officer who observed the chain fragment in the apartment was fully set forth. If this officer was, as we have held, conducting a lawful search under a valid warrant, he had a right to be where he was when he observed the chain fragment "on the top of the dresser." The attack launched by the appellant on this procedure is limited to the alleged insufficiency of the affidavits submitted to the magistrate. In State v. Hawkins (Me.— 1970) 261 A.2d 255 we carefully reviewed the requirements which an affidavit must meet in order effectively to undergird a finding of probable cause and the issuance of a search warrant. We conclude as did the Court below that these requirements were fully met in this case and the chain subsequently and properly admitted at trial as an item of circumstantial evidence came into the hands of the police by lawful seizure under a valid search warrant. For the same reasons three photographs of the chain under magnification were properly received in evidence.

### Admission of Sgt. Jamison Testimony

■ The appellant states the issue in this form:

"The Court erred in overruling Appellant's objection at trial to the admission of Sgt. Albert T. Jamison's notes and testimony regarding statements made by the Appellant in a custodial interrogation, on the grounds the notes were not disclosed to the Appellant in response to his pretrial motion for discovery and were not revealed thereby to Appellant's county assigned investigator when he interviewed said Jamison, where the Appellant claimed he was surprised by their admission into evidence at that time and thereby was denied an adequate opportunity to prepare his defense."

The evidence does not support the statement of issue. Sgt. Jamison was present for only a brief time while the appellant was being interrogated by another officer. He made some notes which he used to refresh his recollection as a witness. These notes were never offered or admitted into evidence. Sgt. Jamison's testimony was very brief and did no more than (a) verify the giving of "Miranda" warnings by the interrogating officer and (b) relate that in answer to a question by the interrogating officer, appellant stated that he stayed at the Manoir Hotel on Wednesday nigh' (the night the homicide was committed) "until it closed which was around midnight." The appellant's investigator did not testify. There is no evidence that the witness failed to reveal anything to the investigator which he had a duty to disclose or that he gave the investigator any false information. There was no violation of M.R.Crim.P., Rule 16(a). Appellant's statement was innocuous and was as consistent with innocence as with guilt. It was at most merely cumulative in the light of the undisputed testimony of the State's witness Cote and the codefendant Turner. No error is shown.

### Negative testimony of Capt. Houston

■ Without objection Capt. Houston, called by the State, testified on cross-examination by the attorney representing the codefendant Turner that his search of

Turner's apartment under warrant revealed no incriminating evidence of any kind. This was proper cross-examination on behalf of a codefendant in no way prejudicial to the appellant and the testimony elicited would have been admissible even over objection.[1]

### Testimony of codefendant Turner

■ Turner elected to become a witness and testify in his own behalf. It is apparent that the appellant did not anticipate that this would be his codefendant's strategy. Although no objection was offered and no motion for mistrial was made,[2] the appellant now contends that the Court should, upon its own motion, have ordered a mistrial. Appellant seems to place reliance on Bruton v. United States (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, in support of his position. The Bruton problem, however, was not presented in the instant case. In Bruton a witness was permitted to relate the contents of an oral confession of one codefendant in a joint trial. This confession expressly implicated the other codefendant. The mischief in Bruton was that the confessing codefendant, not himself a witness, was not subject to cross-examination. We had occasion to examine Bruton carefully in State v. Wing (1972–Me.) 294 A.2d 418, 423. Therein we said, "It has been universally held that the right to confrontation is fully satisfied when the confessing codefendant becomes a witness." So here, no rights of appellant were infringed when Turner unexpectedly decided to become a witness and give testimony which was unquestionably very damaging to appellant. Appellant had full right of cross-examination and could ask no more.

### Admission of photographs

■ Certain photographs were admitted over objection. These photographs fell into three groups, (a) black and white prints depicting the body of the deceased before removal from the scene of the crime, (b) similar prints depicting the interior and exterior of the premises, and (c) color photographs taken during the autopsy. Groups (a) and (b) were taken by a police photographer and group (c) was taken by the pathologist and used by him in the course of his testimony. Objection to admission of the photographs of the body (groups a and c) was based on the usual grounds, that they "appear to be gruesome and will tend only to inflame the minds of the jury." The argument has been advanced many times and as often rejected. These photographs were "relevant to the issues before the Court" and "their probative value (was) not outweighed by the danger of prejudice to the defendant." State v. Duguay (1962) 158 Me. 61, 63, 178 A.2d 129, 130 (quoting Glenn v. State, Okl. Cr., 333 P.2d 597, 601); State v. Turmel (1952) 148 Me. 1, 88 A.2d 367; State v. Rainey (1953) 149 Me. 92, 99 A.2d 78; State v. Ernst (1955) 150 Me. 449, 114 A. 2d 369. Admission of the photographs was within the sound discretion of the presiding Justice and we can discover no abuse of that discretion. In the case of groups (a) and (b) each picture bore on the back thereof a printed caption as follows:

"AUBURN POLICE DEPARTMENT
IDENTIFICATION BUREAU
PHOTOGRAPH TAKEN BY OFF. DEMERS
WHERE TAKEN MORIN BRICK YARD
DATE 5/9 1968    TIME 3:10 A.
CASE MURDER
OMAR GODING"

The presence of this stamp was not called to the attention of the Court until after the pictures had been admitted into evidence and examined by the jury. The Court declined to exclude the photographs because of the presence of the identifying caption, noting first that the motion came too late,

---

1. Although our holding in no way depends upon this fact, it may be noted that appellant's attempted argument is further weakened by the fact that when the codefendant Turner moved for severance at the beginning of the trial, that motion was opposed by appellant whereas the State stood neutral.

2. In so saying we do not mean to imply that either objection or motion would have been soundly based.

and second that the stamp furnished no information as to the nature of the case that the jury had not had from its inception.[3] It is apparent that appellant did not view the presence of the identifying caption as being so potentially prejudicial as to warrant a clarifying instruction to the jury, since none was requested. No error is shown.

The entry will be

Appeal denied.

All Justices concurring.

3. The mere fact that an objection was so grounded, however, suggests the desirability of preparing one set of prints to be offered as exhibits in a criminal case which will bear no identifying stamp. It is obvious that no useful or essential purpose is served by the inclusion of an identifying stamp on an exhibit, and under some circumstances, not present here, might be prejudicial.