**STATE of Maine**

v.

**Henry PRITCHETT, III.**

Supreme Judicial Court of Maine.

March 14, 1973.

John B. Beliveau, County Atty., Auburn, M. Kelly Matzen, Legal Intern, for plaintiff.

Platz & Day by J. Peter Thompson, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, WERNICK and ARCHIBALD, JJ.

WEBBER, Justice.

Charged with an unlawful sale of Heroin, the defendant Pritchett was convicted by a jury in March, 1972. His appeal raises several issues for review.

### Change of Venue

■ On January 14, 1972 counsel for defendant filed a motion for change of venue. This motion was denied on March 9, 1972. The defendant now contends that he was summarily denied the opportunity for hearing on this motion. The record fails to support this contention and fails also to demonstrate or even suggest that defendant was prejudiced in any way by retention of venue in Androscoggin County where the crime was committed.

■ In this case the grounds relied upon in support of the motion were specifically stated therein.[1] In such case, where material facts are not in dispute and the claims made become purely a question of law, decision can be made on the face of the motion and no fact hearing is required. Some contentions frequently made in support of a change of venue are best resolved by the results of *voir dire* examination when a jury is selected. Decision on a change of venue rests in the sound discretion of the Court. State v. Bobb (1942) 138 Me. 242, 252, 25 A.2d 229; State v. Hale (1961) 157 Me. 361, 366, 172 A.2d 631. These general observations have direct application to the disposition of this motion.

■ The first ground recited in the motion was: "The Defendant is Negro and it will be impossible for him to obtain a jury of his peers in the County of Androscoggin." This statement presupposes that the defendant is constitutionally entitled to be tried by a jury composed partly if not entirely of members of his race. That is not the law. In Swain v. State of Alabama (1965) 380 U.S. 202, 203, 85 S.Ct. 824, 826, 13 L.Ed.2d 759, the Court said, "Although a Negro defendant is not entitled to a jury containing members of his race, a State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause." The defendant does not assert by his motion or in argument to us that any such "purposeful or deliberate denial" could be shown to exist in Androscoggin County. The ground actually asserted and relied upon is without merit as a matter of law.

■ The second ground stated in the motion was as follows: "The Defendant has knowledge that certain untrue rumors and stories have been spread about him within the County of Androscoggin, which rumors and stories have inflamed the minds of the public to the degree that it would be impossible to obtain a jury composed of citizens from the County of Androscoggin who would not be prejudiced by virtue of said untrue rumors and stories." This allegation in reality says no more than that an unspecified number of unidentified citizens have been gossiping about the defendant, the exact nature of the gossip being either unknown or at least unstated. It

1. No affidavits were filed in support of the motion. The preferred practice is to recite essential facts in affidavit form. See suggested form of motion in Glassman, Maine Practice, Commentary Sec. 21.6. If counter affidavits are filed, a *fact hearing may be required. If it appears, however, that there is no dispute as to material facts, no fact. hearing is required and a ruling upon the motion can be made in accordance with applicable principles of law. The Court may in an appropriate case properly defer ruling upon the motion until after completion of* the *voir dire* examination of potential jurors. So also the defendant after an adverse ruling upon his motion is not precluded from renewing his motion at the time of trial, when, for example, the results of such examination disclose such prejudice against him as to require a change of venue. See Glassman, Maine Practice, Commentary Sec. 21.2. In the instant case we have, however, dealt with the factual allegations in the motion as though they had been set forth in affidavit form.

is not every nebulous charge in a motion which compels or even warrants a hearing. The extraordinary growth of pretrial motion practice in the past few years has produced overcrowded dockets and greatly increased the burden placed upon the several Justices of the Superior Court. Practical necessity dictates the need of affording reasonable discretion in the way certain types of allegations inserted in pretrial motions are disposed of, else there will be insufficient time available for the conduct of jury trials to determine guilt or innocence. The allegation under consideration illustrates that need. A fact hearing to determine who said what to whom in a community of many thousands of people would be a fruitless and time consuming task. The true objective is to ascertain whether the potential jurors have acquired a bias or prejudice against the defendant or a fixed and settled impression as to his guilt or innocence. The effect, if any, of local gossip can best be ascertained by the examination of persons called for jury duty prior to their selection to try the defendant. With respect to this allegation no other "hearing" was required.

■■ The third allegation may be summarized. It states in effect that certain newspaper articles, copies of which are attached to the motion, covered "a so-called drug raid" in the course of which defendant was arrested; and that these articles were of such a nature that "it will be impossible for the Defendant to obtain a jury within the County of Androscoggin who will not have prior knowledge of the incident." It must be noted at the outset that merely having knowledge of an incident is not the test for disqualifying a juror. Many jurors have such knowledge but have formed no fixed opinion as to the facts or as to the guilt or innocence of a defendant—and are not thus disqualified. Nevertheless, we have examined these newspaper articles and can say of them, as we did in State v. Berube, (Me.—1972) 297 A.2d 884, 886, that they "met every reasonable standard of fair reporting." The reporting was purely factual and conveyed no impression as to the guilt or innocence of the more than thirty persons arrested in the raid. Indeed, the newspaper stance was well summarized by a statement in an editorial in the Lewiston Evening Journal of January 8, 1972 reminding the reading public that "obviously those arrested are to have their day in court. There should be no pre-judgments made with regard to the outcome of their individual cases." By no stretch of the imagination could it be said that factual reporting of this type created a climate of hostility toward the defendant so infecting the community that he could not obtain a fair trial therein. Since the newspaper articles speak for themselves, no disputed facts were involved and no fact hearing was required.

■ The last ground relied upon in the motion is stated in these terms: "The Defendant believes that because of the manner in which he was arrested that he will be associated with others who were arrested at the same time and that a finding of guilt against one of the others will be tantamount to a finding of guilt against him in the event the Defendant's jury or any part thereof, served as members of the jury on another charge against another individual who was arrested at the same time as the Defendant or within a matter of a few hours thereof." The argument implicit in this allegation bears some similarity to contentions frequently made in support of a motion for severance or a motion for continuance. It lends no support whatever to a request for a change of venue. The anticipated difficulty is one properly disposed of by proper use of challenges after examination of the jurors or, if necessary, by a motion for continuance.

■ For the reasons stated we are satisfied that this motion could be decided upon its face without the necessity of a protracted fact hearing—and that it was decided correctly. The record discloses that on March 9, 1972 and before trial, the

Court afforded counsel an opportunity, with a reporter in attendance, to take up the several pretrial motions then pending. There ensued an extended colloquy and discussion in the course of which defendant's pending motions, save only the motion for change of venue, were considered and several additional oral motions made and disposed of. The Court was not then informed that a fact hearing was desired or why one should be deemed necessary on the motion for change of venue. Indeed, no mention was made of that motion although final action was taken on it that day. Moreover, as we have noted, any prejudice from failure to change venue is most clearly demonstrated by *voir dire* examination. The defendant has not seen fit to make this examination a part of the record on appeal. We can therefore fairly assume that no prejudice was thereby revealed. The record does disclose that after a jury had been selected, the following colloquy occurred:

"The Court: Does the State have any challenge for cause?

Mr. Beliveau: No, none for cause.

The Court: Do you (counsel for defendant) have any challenge for cause?

Mr. Thompson: No.

The Court: Is the jury as now constituted satisfactory to the State, Mr. County Attorney?

Mr. Beliveau: Yes, your Honor, it is.

The Court: And to the defendant, Mr. Thompson?

Mr. Thompson: Yes, it is, your Honor."

We conclude that there was no abuse of discretion denying defendant's motion for change of venue without a preliminary fact hearing and no prejudice resulted to the defendant from that ruling.

### Chemical Analysis of Drug

On January 14, 1972 the defendant filed a pretrial motion captioned "Motion for Discovery, Inspection and Analysis of Evidence." This motion contained numerous requests among which was the following:

"3. The Defendant has reason to believe that the State has in its possession or under its control certain material or compounds alleged to be a certain narcotic drug or drugs, to wit, Heroin and/or Cannabis Sativa L. The Defendant moves that this Honorable Court will:

a. Order the State to release *to the Defendant, his attorney, or other person satisfactory to the Defendant* a sufficient quantity of said alleged narcotic drug or drugs to permit a private chemical analysis thereof by a competent person of the Defendant's own choosing." (Emphasis ours)

The motion was denied and defendant asserts that this constituted an abuse of discretion. The record is inadequate to support this claim of error. It discloses that the motion was discussed in chambers on March 9, 1972. It is apparent from that discussion that there had occurred at least one prior off-the-record conversation in the course of which the Court had indicated a willingness to provide the defendant with a consultant of defendant's own choosing at the State's expense but had indicated his intention to deny the motion insofar as it involved a release of the narcotic drug from the State's custody. The defendant offered no evidence in support of the motion and we are left with no evidentiary basis by which to test whether or not his request to have a quantity of this narcotic drug released to an unnamed person selected by him to be removed to parts unknown was either necessary or reasonable.

Our interpretation of the requirements of M.R.Crim.P., Rule 16 as applied to tests of drugs and other substances which may be

destroyed or chemically altered in the testing process is contained in our opinion in State v. Cloutier, 302 A.2d 84, filed this day. We deem it unnecessary to treat the matter further in the instant case because any claim of prejudicial error stemming from the ruling was waived by subsequent conduct of the defendant in the course of the trial.

▪ As its last witness the State presented Mr. Richard French, identified as a chemist in the State Public Health Laboratory in Augusta.[2] When Mr. French had been sworn as a witness and had stated his name, the proceedings were interrupted and the following colloquy ensued:

> "Mr. Beliveau: We have been informed of a possible stipulation concerning the chemical analysis, and that Exhibits 1 and 2 were in fact delivered to the laboratory and brought here by the chemist.

> The Court: Do I understand the defendant will stipulate that the chemist, Mr. French, would testify that the materials given him by Detective Perham here, in his opinion, contained Heroin?

> Mr. Thompson: Yes, your Honor.

> The Court: And State's Exhibits 1 and 2 which have been in his possession since that time are the same as were delivered to him by Detective Perham and from which he obtained the sample which he analyzed as Heroin. You offer State's Exhibits 1 and 2?

> Mr. Beliveau: Yes.

> The Court: You have any objections, Mr. Thompson?

> Mr. Thompson: No objections.

> The Court: State's Exhibits 1 and 2 are admitted without objection."

Although the precise wording of the stipulation falls short of stating that the substance in the exhibits was in fact Heroin, we are satisfied that such was the actual intent of the Court and the parties when the stipulation was made. This is evidenced not only by the immediate admission of State's Exhibits 1 and 2 *as Heroin* without objection but also by subsequent proceedings. In the course of the Court's instructions to the jury, the Court said:

> "In this case the defendant has stipulated that the substance that has been introduced into evidence that was examined by the chemist, and which was delivered by the police officer, Mr. Perham I believe, to the chemist, *was in fact Heroin.* When the parties stipulate to a certain fact, Ladies and Gentlemen, the Jury must accept that fact in the same way as though it were proven by a witness or witnesses from the witness stand." (Emphasis ours)

The case was then submitted to the jury by further instructions on the basis that the sole issue for their determination was whether or not there was a sale. At the close of these instructions the Court offered an opportunity to note objections to the charge and was informed that the defendant had none. The defendant, having personal knowledge of the substance he sold and having stipulated that it was in fact Heroin, has effectively removed any alleged errors bearing on the proof of that fact from further consideration.

### *Voir Dire* Examination

On March 7, 1972 the defendant filed a motion requesting that his counsel be permitted "to voir dire the jury" and incorporating 17 questions to be asked of each potential juror. This motion came on to be considered and decided with other pretrial motions on March 9, 1972. The mo-

---

**2.** This identification was furnished by Detective Perham who turned over the Heroin Samples, State's Exhibits 1 and 2, to Mr. French at the Laboratory. A report of Mr. French's analysis finding the tested substance to be Heroin had been furnished to the defendant by the State prior to trial.

tion was denied, the Court indicating that *voir dire* would be conducted by the Court.

■ The defendant properly recognizes that control of *voir dire* examination rests in the sound discretion of the Court. Procedure is governed by M.R.Crim.P., Rule 24(a) as amended which provides:

> *"Examination of Jurors.* The parties or their attorneys may conduct the examination of the prospective jurors unless the court elects to conduct an initial examination itself. If the court elects to conduct an initial examination, when that examination is completed the court shall permit the parties or their attorneys to address additional questions to the prospective jurors on any subject which has not been fully covered in the court's examination and which is germane to the jurors' qualifications."

■ As already noted, the *voir dire* examination was not included in the record on appeal. We have no available means of reviewing these proceedings. We assume, however, that if any prejudicial infraction of the Rule had been noted, the record would have been brought forward.

### Sufficiency of Evidence

■ The appeal raises the issue of the sufficiency of the evidence to prove a "sale"[3] of Heroin beyond a reasonable doubt. On the basis of undisputed evidence the jury could properly conclude that the State's undercover agent made an agreement with the defendant for the sale of Heroin to be procured by the defendant on his next "run"; that the agreed purchase price was paid in advance by the agent to the defendant; that the defendant designated a named third party who resided in defendant's apartment as his agent to make delivery of the drug in event of defendant's absence; and that delivery was made to the purchaser by the named agent for and on behalf of the defendant, thus completing defendant's "sale." The jury was entitled to draw reasonable inferences, and these beyond a reasonable doubt, from the apparent relationship existing between the defendant and his designated agent, from the fact that the substance delivered accorded both as to its nature and quantity with the agreement made between the defendant and the purchaser, and from the fact that the agent made delivery of the Heroin without question or hesitation and without requiring or receiving any payment therefor. The rational inference to be drawn from these facts was that the designated third party made delivery of the narcotic drug for and on behalf of the defendant as seller.

The entry will be

Appeal denied.

POMEROY, J., did not sit.

---

3. Although we here deal with the evidence of a completed "sale" as presented by the State, the "sale" of narcotic drugs proscribed by statute is somewhat broader in scope.

22 M.R.S.A., Sec. 2362, P.L.1971, Ch. 487, Sec. 4, in effect at the time of this offense, provided in pertinent part:

"Whoever shall * * * sell * * * any narcotic drug, except as authorized in this chapter, shall upon conviction thereof be punished" etc.

(No authorized exception is claimed). 22 M.R.S.A., Sec. 2361, Subsection 24 defines "sale" in these terms:

" 'Sale' includes barter, exchange or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant or employee."

Thus the proof actually exceeded the requirements for conviction. See State v. Allen (1972-Me.) 292 A.2d 167, 171.