**STATE of Maine**

v.

**Harold TRACY.**

Supreme Judicial Court of Maine.

Argued April 28, 1980.

Decided June 18, 1980.

---

Joseph H. Field, William R. Anderson (orally), Asst. Dist. Attys., Belfast, for plaintiff.

Brown & Crowe, Stanley W. Brown, Jr. (orally), Belfast, for defendant.

Before McKUSICK, C. J., and WER-NICK, GODFREY, NICHOLS, GLASS-MAN and ROBERTS, JJ.

WERNICK, Justice.

Defendant Harold Tracy has appealed from a judgment of conviction entered in the Superior Court (Waldo County) on the verdict of a jury finding him guilty of having intentionally and knowingly trafficked in a Class Z drug, marijuana (17–A M.R. S.A. § 1103). The sole point raised on appeal is that the presiding Justice committed an abuse of discretion in denying defendant's pre-trial motion that because of allegedly adverse pre-trial publicity, the trial should be postponed.

We deny the appeal.

*1.*

On the morning trial was to commence, a local newspaper (Bangor Daily News, Waldo County Edition) and a Belfast radio station carried news reports of a large scale drug raid involving approximately 30 arrests.[1] This raid, and the arrests made during the course of it, were not connected with the charges on which defendant was about to be tried. Among those arrested in the raid, however, were two persons, Harold Tracy, Jr. and Wendell Tracy, who happened to be defendant's sons. Their names appeared in the published lists of the persons arrested in the raid, but they were not in any way identified as related to defendant.

The newspaper article began on the front page. It bore the heading "28 arrested on drug charges" and gave the following information: the number of arrests (28), the length of investigation (4 months), the law enforcement agencies involved, the number of grand jury indictments, the names and hometowns of those arrested, the general nature of the charge, and a comment by the Waldo County District Attorney praising the efficiency of the law enforcement agencies. The names of Harold Tracy, Jr. and Wendell Tracy were listed on the page 22 *continuation of the story from page one.*

Defendant's motion was for a continuance of trial until the next court session.

---

1. The content of the radio broadcast was not included in the record on appeal. We assume that the radio broadcast's content did not differ significantly from the information contained in the newspaper article. We stress that one who seeks relief against alleged adverse effects of pre-trial publicity should offer *evidence* of what is claimed to be prejudicial.

Defendant's claim was that the listing of the names "Harold Tracy, Jr." and "Wendell Tracy" would give rise to "undue influence and prejudice to his case." The presiding Justice denied the motion for continuance, deciding at the same time that he could, and would, take special precautions by voir dire examination of the prospective jurors to ascertain whether any prejudice existed.

In conducting the voir dire examination, the presiding Justice asked the following questions specifically relating to the issue of pre-trial publicity: (1) who among the venirepersons were not aware of the drug raid reported in the newspaper and on radio that morning? (2) of those who had read or heard about the raid, who would be prejudiced against defendant thereby? (3) did those who had read or heard about the drug arrests read to know the names of those arrested?

In response to the first question, thirteen venirepersons answered that they had neither read nor heard about the recent drug arrests. Although the total number of venirepersons is not revealed in the record, it may be inferred from the manner in which the responses were made (by assigned number) to the questions posed that there were approximately forty venirepersons. Thus, the record shows that at least a majority of the forty had either read or heard about the drug arrests. In response to the second question, one person acknowledged that his having read, or heard, about the drug raid reported by the media would prejudice him against defendant. This person was later excused for cause. In response to the Justice's third question four persons said that they knew some of the persons whose names they had read as having been arrested in the raid; one person who had read the names did not know anyone arrested. Of the four people who knew some of the persons named as having been arrested, one was subsequently excused for cause.

At the completion of the examination of the venirepersons, a bench conference was held at which the presiding Justice, on his own initiative, excused for cause the two persons whom we have already referred to as having been excused. Defendant's attorney did not ask the Justice to excuse any other venirepersons for cause. The record does not disclose the composition of the impanelled jury.

*2.*

Defendant argues on appeal that because more than a majority of the venirepersons had read, or heard, about the drug raid and the arrests, and some were aware of the names of those arrested, the presiding Justice was guilty of an abuse of discretion in failing to recognize the existence of a potential of prejudice against defendant sufficient to require postponing the trial. Especially is this so, defendant argues, since (1) it is difficult to measure accurately by voir dire the impact of such information upon potential jurors who are likely to be reluctant to make a public admission of prejudice, and (2) a postponement would have been neither an inconvenience nor a serious delay.

We disagree.

"[A]n abuse of discretion will be found only if 'palpable error' or 'apparent injustice' is established by the party charging the abuse." *State v. Simmonds*, Me., 313 A.2d 120, 122 (1973).

*See also State v. Hume*, 146 Me. 129, 78 A.2d 496 (1951), in which defendant raised a similar claim that a trial Justice had abused his discretion in denying a motion for continuance brought to avert allegedly adverse pre-trial publicity. Here, as in *Hume*, to assess whether the presiding Justice was sound in his exercise of discretion we examine both the nature of the publicity involved and the evidence of prejudicial effect upon the prospective jurors. The inquiry includes an evaluation of whether defendant was denied constitutional due process of law. *See State v. Littlefield*, Me., 374 A.2d 590 (1977).

We discern in the record before us no "palpable error" or "apparent injustice." To the contrary, we find enough to show that the presiding Justice stayed well within the bounds of a sound exercise of discretion.

We consider, first, the nature of the news coverage. Although it has been recognized that some publicity may be intrinsically so prejudicial that it makes impossible, or highly unlikely, a fair trial within the particular locale affected by the publicity, *see State v. Littlefield, supra,* at 594,[2] the news coverage in this case was not intrinsically prejudicial. It was a straightforward, factual account of the police investigation and arrests. *See State v. Clark,* Me., 386 A.2d 317 (1978); *State v. Littlefield, supra; State v. Pritchett,* Me., 302 A.2d 101 (1973). The investigation and arrests were unconnected with the charges for which the defendant was being tried, and therefore it is not a reasonable argument to assert that the publicity in and of itself was inflammatory or created a hostile climate. *See State v. Clark, supra; State v. Pritchett, supra; State v. Berube,* Me., 297 A.2d 884 (1972).

Second, the record fails to show that the news accounts caused actual prejudice in the attitude of any of the venirepersons toward defendant. In arguing that prejudice was created, defendant's point is that we cannot exclude the reality that some of the prospective jurors would surmise either that defendant had again been arrested on drug charges or that persons closely related to defendant had been thus arrested, and such surmise would engender a general initial prejudice against defendant about to stand trial for trafficking in marijuana.

Defendant's argument is unpersuasive. The general knowledge of a "drug bust" is not a sufficient basis to establish actual prejudice. *State v. Pritchett, supra,* at 104. Here, in particular, that the presiding Justice carefully undertook to expose the existence of a latent general prejudice further weakens the force of defendant's contention. The Justice instructed the panel of prospective jurors

"to think deeply because I want you to reflect upon the fact that this is an action involving the sale of drugs, and that is the issue in this case, whether a sale of drugs took place. Sometimes the very nature of this type of a case will cause people to become prejudiced against the Defendant, and . . . [one of the venirepersons] has already indicated that he would be."

Moreover, the entirety of the voir dire proceedings, here, dissipates the cogency of a contention that the reported arrests of persons bearing names so similar to his would cause prejudice against defendant. Only four of the venirepersons acknowledged any familiarity with some of the names of those arrested. One other venireperson who had been aware of some of the names disclaimed familiarity with any of them. All other members of the panel who were generally aware of the news had neither read nor heard the names of those arrested. One of the four panel members who had read and recognized the names of those arrested was excused for cause not only because of that specific awareness but also for reasons unconnected with the publicity issue.[3]

Defendant maintains that voir dire examination cannot be effective as a means of ascertaining the existence of prejudice because people are reluctant to admit to a judge that they may be subject to prejudice or bias and may be unable to decide fairly. Our view is that defendant's premise is not true in general and, more particularly, is not a correct description of the situation in the case at bar. Here, one venireperson exposed to the morning's news stories freely admitted that it could influence him against defendant. Moreover, as we have already mentioned, the presiding Justice

2. *Littlefield* cites *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) (pre-trial disclosure of inadmissible evidence and names of prospective jurors; disruptive press participation during trial and lack of jury sequestration) and *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (frequent pre-trial telecasts of defendant's jail cell confession to a police officer).

3. The record fails to show whether the remaining three who had read and recognized some names were, or could have been, aware that two persons arrested were sons of the defendant.

was careful to impress upon venirepersons that it was their obligation to acknowledge any source of prejudice that might impair their fairness and impartiality as a juror. We think that even reluctant persons so admonished would tend to speak up. Furthermore, here, once the presiding Justice excused two of the venirepersons for cause on the basis of their statements as to the impact of the news stories, counsel for defendant did not see fit to challenge any other venirepersons for cause on grounds of actual, or potential, prejudice arising from the pre-trial publicity. This suggests recognition by counsel for defendant of the therapeutic value of the voir dire examination, accompanied by the admonition of the presiding Justice, in exposing and protecting against prejudice. *See State v. Clark, supra,* at 321.

The presiding Justice did not commit an abuse of discretion by denying defendant's motion for postponement of the trial.

The entry is:

Appeal denied.

Judgment affirmed.

All concurring.

